ROBERT H. DALTON AND WIFE v. EDWIN RUST AND OTHERS.

Where the vendors of a tract of land, made a bond for title, in which it was stip-
ulated that they would make the title when the purchaser should, accord-
ing to the terms of the agreement, pay two dollars per acre for the land;
and the land was described only by metes and bounds, without desig-
nating the number of acres sold, or contained within the boundaries; and
acknowledged the payment of part of the purchase money; the vendee dying,
leaving unpaid the balance of the purchase money, the vendors filed a peti-
tion in the County Court, where the estate was administered, averring said
indebtedness, and the consideration thereof; that the account against said
estate, for such balance, had been properly allowed and approved; attached a
copy of said bond for title to the petition, as an exhibit, describing the land;
and prayed for a sale thereof to satisfy their lien; in accordance wherewith
the land was ordered to be, and was sold, by the administrator. Sale confirmed,
and proceeds paid to them. In a suit against them, by the purchaser, for the

land, as described in the bond, and order and confirmation of sale, in the absence of fraud, or concealment by the purchaser : Held, that the defendants were estopped from questioning the sale or conveyance, by virtue thereof, of all the land embraced within the boundaries set forth in the bond.

Under such state of facts : Held, that the defendants were estopped from setting up as a defence, that during the lifetime of the obligee of the bond, there had been a survey of the land, to which he had assented, changing the boundaries from those contained in the bond ; that they never intended to ask the County Court for a sale of the land actually described in the bond, but that their attorney made a mistake in asking a sale according to the bond ; that the obligee, in his lifetime, only claimed, according to the said survey, (varying the original contract as to boundaries,) 1,780 acres ; that the administrator intended to, and did sell, only 1,780 acres ; and that the purchaser supposed she was buying that number of acres.

One of the defendants, setting up as a defence, that at the time of the making of such bond for title, which she signed, she was a joint owner of the land described therein, as her separate property, and was then, and still continued, a married woman, and had never acknowledged the execution thereof, in the manner required by law, in cases of sales of separate property by married women: Held, that she was estopped by her action in the County Court, and by the fact that she afterwards received the purchase money, from setting up any defect in the bond.

Where such sale is made, as aforesaid, on such petition and order of sale, and the entire tract is sold to the highest bidder, notwithstanding it may have been advertised as containing a specific number of acres, and all parties may have adopted the idea, that the obligee of the bond had purchased but that number of acres, and the purchaser may have supposed she was purchasing no more ; in the absence of fraud, concealment, or of proof that the purchaser had any better means of ascertaining the true number of acres included in the description contained in the bond, than any other person ; such purchaser acquired a good title to the whole, though the tract contained a a greater quantity of land than was supposed.

It is a well settled principle, that where land is sold by metes and bounds, the recital of the number of acres is mere matter of description, and is not supposed to influence the contract of the parties ; inasmuch as men may easily err in their estimate of the number of acres, within certain lines, but cannot err as to where marks, or monuments, or natural objects, are on the earth's surface.

It is equally well settled, that courts of equity cannot relieve against a mistake, as to the number of acres contained in a tract or parcel of land, sold by metes and bounds, where there is no element of fraud.

The purchaser, at such administrator's sale, would not be responsible to the obligors of such bond, for the payment of the value of the excess in the number of acres contained in such tract, over and above the amount supposed to have been contained therein by the obligee.

ERROR from Guadalupe. Tried below before the Hon. Alexander W. Terrell. Suit brought by Virginia Dalton, joined by her husband, Robert H. Dalton, plaintiffs in error against Edwin Rust and Phœbe Rust, and Caroline Stuart, defendants in error, for a certain tract of land, alleged to be the separate property of said Virginia. The bond for title, from the defendants to M. W. Lindsay, referred to in the opinion, is as follows:

"The State of Texas, ⎱ Know all men by these presents, "Guadalupe County. ⎰ that we, Edwin Rust and Phœbe "Rust his wife, and Caroline Stuart, are held and firmly bound "unto Matthew W. Lindsay, in the penal sum of four thousand "dollars, the payment whereof, well and truly to be made, we "bind ourselves, our heirs, executors and administrators, jointly "and severally, by these presents. Sealed with our scrolls, by "way of seals, and dated this the 10th day of June, 1853. The "condition of this obligation is, that whereas, we have sold to "said Matthew Lindsay a tract of land, to be arrived at as fol- "lows, to wit: Said land is a portion of survey fifty-three, (53) "class No. five, (5) lying on York's creek, in said State and "county, being about ten miles in a northern direction from the "town of Seguin, and being the head-right of John Jones, "the portion sold as aforesaid to be arrived at as follows: "Beginning at or near the point on the southern line of said "survey No. 53, where the Austin road, or McGee road, strikes "said survey, so as to make the line running due north from "said point to York's creek, run about one hundred yards west "of a large live oak mott, running thus and thence north to "York's creek; thence with the meanderings of said creek, to "the point where the eastern line of said survey crosses said "creek; thence various courses, to the beginning, so as to in- "clude all the land of said survey east of the beginning line, "and south of York's creek, except a tract supposed to contain "one hundred and fifty acres, sold off the south-east corner of "said survey, to one Ward. We have sold said land to said "Lindsay, for two dollars per acre, one thousand dollars of

"which we acknowledge to be paid, and the balance is to be "paid in twelve months from the date of these presents. Now, "as soon as said purchase money is paid, we will make to said "Lindsay a perfect title to said land; this being done, the above "obligation to be void, otherwise to remain in full force.

|              |                            |
|--------------|----------------------------|
|              | "EDWIN RUST, [L. S.]        |
| "Witness,    | "PHŒBE RUST, [L. S.]        |
| "J. W. YOUNG." | "CAROLINE STUART, [L. S.]  |

Attached to this, was the proof of the execution and delivery of the same, by Joshua W. Young, the witness, before the clerk of the County Court of said county. But there was not attached to it any act of acknowledgment, or privy examination of Phœbe Rust; nor was any such shown by the statement of facts.

The petition referred to, filed by the defendants, in the County Court, is as follows:

"The State of Texas, ⎱ County Court,
"Guadalupe County. ⎰ January Term, 1855.
    "To the Hon. H. G. Henderson, chief justice of said county:
"Your petitioners, Edwin Rust and Phœbe Rust, his wife, and "Caroline Stuart, all citizens of said county, would state unto "your honor, that the estate of Matthew W. Lindsay, deceased, "is indebted to them in the sum of $2,485, with interest "from the 10th day of June, 1854; which account has been sub-"mitted to T. C. Greenwood, Esq., administrator of said estate, "and by him allowed, and which has also been approved by the "honorable chief justice of said county; that said account is due "to your petitioners, for the sale of a tract of land to said "Lindsay, in his lifetime, a copy of which contract is herewith "filed.

    "Your petitioners state, that they have a special lien upon "said land, for the payment of the purchase money therefor, "and pray your honor to grant them an order of sale of said

Dalton  v.  Rust.

"land, or so much thereof as may be necessary to discharge the "claim of your petitioners against said estate, and for general "relief.                                              " IRELAND,

"For petitioners."

The survey referred to, and alleged by defendants to have been made for M. W. Lindsay, and which they averred he agreed to accept in satisfaction of the land, agreed to be conveyed to him in the bond for title, purported to be a survey of the same tract of land; describing the same by metes and bounds, different from those made by J. P. Heetor, under the order of the District Court, of the tract set forth in the bond, and differing in the shape of the plots of the respective surveys, as presented in the record, by the two surveys aforesaid. The said survey referred to by the defendants, as that surveyed by Cummings, contained 1780 acres.

Greenwood, the administrator of the estate of M. W. Lindsay, deceased, conveyed the land described in the bond for title, to Virginia Dalton, (then Virginia Lindsay,) under an order of the County Court confirming the sale, and requiring him to convey to the purchaser. Deed dated March 28th, 1855. It was admitted that, at the date of the sale and conveyance, the plaintiff, Virginia, was the widow of said M. W. Lindsay, and since married to said Robert H. Dalton. Mrs. Phœbe Rust denied that she had received any benefit from the sale to M. W. Lindsay, under the contract, under which said title bond was made.

The following special issues were presented by the court to the jury; to which they responded as follows:

"1st. What quantity of land was contained in the field notes "set forth in the bond, charged to have been executed by Phœbe "Rust and Mrs. Stuart, to Matthew Lindsay?

Answer. "Whole number of acres included by field "notes, in bond,            -        -        -        -        2,310½
"Deduct from the Ward tract,        -        -        -        150

"Whole number contained,        -        -        -        2,160½

"2d. Did Phœbe Rust, joined with her husband, and Caroline "Stuart, petition the Probate Court, having jurisdiction of the "estate of Matthew Lindsay, deceased, for an order to sell the "land described in the bond from Phœbe Rust and Caroline "Stuart, in order to satisfy their claim for the unpaid purchase "money due on said contract of sale? If so, what amount of "the purchase money had been paid, and what amount was then "alleged, by the defendants to be due?

Answer. "They did. One thousand dollars of the purchase "money had been paid,   -   -   -   $1,000 00
" And Sept. 25th, 1854, seventy-five dollars,   -   75 00

$1,075 00
"Balance due defendants,   -   -   -   2,485 00

"Whole amount for 1780 acres of land, at $2,   -   $3,560 00

"3d. If such order of sale was ever made, was all the land "included in the description given in the bond, sold under said "order, at administrator's sale? If all the land described in "the bond was not sold, how much was sold, and who became "the purchaser?

Answer. "It was not. It appears by the records of the Pro-"bate Court, that only 1780 acres were sold, and that Mrs. "Virginia Dalton became the purchaser.

"4th. What amount of money has been paid the defendants, "by Matthew Lindsay and Virginia Dalton, for the land de-"scribed in the petition and said bond?

Answer. "Whole amount of money paid defendants, by "Matthew Lindsay and Virginia Dalton, thirty-seven hundred "and forty-six dollars.

On return of the answer of the jury, the court amended the last issue, by adding: "Exclusive of interest at 8 per cent., "from the date the same was due, under the conditions of the " bond:" to which the following special answer or verdict was given:

" Amount of money paid the defendants, by Matthew Lind-

"say and Virginia Dalton, for land described in petition and "bond, thirty-five hundred and ninety-one dollars and fifty-nine "cents, ($3,591 59), ascertained as follows:

| | | | | | |
|---|---|---|---|---|---:|
| "1st payment, | - | - | - | - | $1,000 00 |
| "2d " | - | - | .- | - | 75 00 |
| "3d " | - | - | - | - | 2,671 00 |
| | | | | | $3,746 00 |
| " Amount of interest subtracted, | | - | - | | 154 41 |
| "Whole amount paid, | - | - | - | | $3,591 59 |

"5th. Did Matthew Lindsay, during his lifetime, agree with "the defendants, that the line running north from the beginning "point, should, after passing the live oak mott described in the "bond, take the course to the east as delineated on the plot re- "turned by the surveyor? And are you satisfied, from the facts "and circumstances of the case, that the plaintiff, Mrs. Dalton, "was aware of said agreement, at the date of her purchase at "probate sale?

Answer. "He did; in that, when on the west line being traced "out by surveyor Cummings, he made no objection to the same; "said line was run by request of E. Rust, a defendant in this "cause. We are not aware of Mrs. Dalton having any know- "legde of said compromise line, on the west side of the tract.

"6th. Did Matthew Lindsay, during his lifetime, claim but "seventeen hundred and eighty acres, under his contract with "the defendants? And do you believe, from the testimony, "that the plaintiff, Mrs. Dalton, was aware that he had claimed "no more, at the date of her purchase at the probate sale?

Answer. "He did not, according to the testimony of Col. J. "W. Young, claim more than seventeen hundred and eighty "acres. Mrs. Dalton was aware of the fact, that her husband, "Mr. Lindsay, claimed only seventeen hundred and eighty acres, "at the time of her purchase at the administrator's sale.

"7th. Were Matthew Lindsay, and the defendants, both mis-

"taken in regard to the quantity of land really contained in "the limits of the same, as given in the bond, at the time the "bond was executed? And was Mrs. Virginia Dalton aware "of said mistake, at the date of the purchase at probate sale?

Answer. "All the parties to this cause were ignorant of the "true quantity of land, contained in the limits laid down in the "title bond, at the time of its execution. Mrs. Dalton believed, "at the administrator's sale, that the tract contained seventeen "hundred and eighty acres.

"8th. If the jury believe that a contract was made between "Lindsay and Mr. Rust, to change the survey, were Mrs. Stuart "and Mrs. Rust parties to such change of contract, and which "of them had knowledge of such contract, if either of them?

Answer. "It is not our opinion, that either Mrs. Rust or Mrs. "Stuart were acquainted with the change of survey by contract; "but that Mr. Rust was acquainted with the same.

"9th. Was defendant, Phœbe Rust, at the time of the execu- "tion of the bond to Lindsay, the owner of one-half of the "land in controversy; and was she then a married woman; and "has she been so up to the present time; and was her signa- "ture to said bond, acknowledged by her upon a separate exami- "nation, apart from her husband?

Answer. "She was, at the time of executing the bond to M. "W. Lindsay, owner of the one-half of the tract sold; she was at "that time, and is yet, a married woman. Was not examined "apart from her husband, but affixed her signature to the bond.

"10th. Is there any evidence that the defendants ever made "any conveyance, in fee simple, to M. W. Lindsay, in his life- "time, or to Virginia Lindsay, or to the plaintiff, Virginia Dal- "ton, after the death of said Lindsay?

Answer. "There is no evidence of conveyance, in fee simple, "to M. W. Lindsay, in his life time, or to Mrs. Lindsay, or Mrs. "Virginia Dalton, after his death.

"11th. Was Ireland, (the attorney of Rust,) laboring under "a mistake, at the time he filed in the Probate Court, the petition "for the sale of the land?

Answer. "Attorney John Ireland made no mistake in the pe-
"tition for sale of land.

"12th. Did said Ireland make this mistake, by reason of not
"having been informed of the change in the lines of the land?

"Answered next above.

Of the foregoing issues, the 8th was presented by the counsel
for the plaintiffs; and the 9th, 10th, 11th and 12th, by the
counsel for the defendants, and submitted to the jury by the
court.

The sixth and seventh assignments of error, by the plaintiff
in error, were as follows:

"6th. Because the judgment of the court is contrary to the
"law and facts of the case.

"7th. Because the judgment ought to have been only in favor
"of the plaintiffs, for the land and the costs of the suit."

It appeared from the record, that the court overruled the mo-
tions of both parties for new trials. (The motion of the plain-
tiff alone appeared in the transcript.) The plaintiffs prosecuted
this writ of error. Assignments of error were filed by both
parties.

The other facts of the case appear from the opinion.

*J. J. Thornton,* for plaintiffs in error. Now, do these facts,
and the law arising thereon, warrant the conclusion that Mrs.
Lindsay, (now the plaintiff, Mrs. Dalton,) did not buy all the
land included within the boundaries set out in the bond of the
defendants, to M. W. Lindsay, deceased?

I. The defendants, of their own volition, came into the Pro-
bate Court, and set up that they had sold all the land, included
in the boundaries set out in their bond, to Matthew W. Lindsay,
deceased, and pray that it be sold to pay them the purchase
money therefor.

II. The Probate Court ordered a sale of the same land, de-
scribed in the bond to Lindsay; not any other or different land,
nor any greater or less quantity of land, but the same identical
land, which defendants had petitioned to be sold.

. III. The Probate Court confirmed the sale made by Greenwood, under that order, to Mrs. Lindsay, and directed him, as administrator, to convey the land by the description contained in the bond.

So far we have no difficulty in arriving at a conclusion, as to what precise tract of land, both the defendants and the Probate Court intended to be sold. But if there is any doubt or difficulty about the matter, at all, it must arise —

1. From the entry of the words, "Mrs. Lindsay, 1780 acres "of land, $2,700 00," made by the administator at the bottom of the sale bill of the law books, in connection with which the sale of the land is reported; or —

2. From the words, "a tract of land about 1780 acres, lying "in Guadalupe county," &c., which are contained in Greenwood's advertisement of the sale of the land; or —

3. From the words, "supposed to contain, by estimation, "seventeen hundred and eighty acres," which, in the deed by Greenwood to Mrs. Lindsay, is added to the description of land contained in the bond.

Now, what is the true legal meaning and effect of these terms? If they be mere surplusage, and wholly immaterial; or, if they be only words of description; and if it be the law, that the conveyance of a tract of land, by metes and bounds, or by other certain description, will control the quantity, although not correctly stated; then was not Mrs. Lindsay a purchaser of the land in gross, for a sum in gross? and does she not take the tract by its boundaries, without any reference to the number of acres?

If the tract contains a greater quantity of acres than was estimated, and if the defendants had it fully in their power, to ascertain the exact quantity of acres; but choose rather to rely on an estimate of the quantity, and Mrs. Dalton has committed no fraud in the transaction, have the defendants any right to complain? Can they compel her to pay for the excess?

Does she not rather take the whole tract, under her purchase,

for the sum in gross which she has paid ?   How stands the law in this matter ?

Chancellor Kent, in his Commentaries, vol. 4, pages 467-8, says, "The mention of the quantity of acres, after a description "of the subject by metes and bounds, or by other known spe- "cification, is but matter of description, and does not amount to "any covenant, or afford ground for the breach of any of the "usual covenants, although the quantity of acres should fall "short of the given amount.   Whenever it appears, by different "boundaries, or by words of qualification, as, more or less, or as, "containing by estimation, or the like, that the statement of the "quantity of acres is mere matter of description, and is not of "the essence of the contract, the buyer takes the risk of the "quantity, if there be no intermixture of fraud."

In the case of Mann v. Pearson, 2 Johns. Rep. 37, this point is clearly decided.   The maxim is, *falsa demonstratio non nocet.* In the case of Mann v. Pearson, Spencer, J. in delivering the opinion of the court, says: "I will only add that, in my own ex- "perience, and I may say with propriety, in the universal "opinion of conveyancers, the enumeration of quantity, after a "description of the subject, is superfluous and immaterial; and "in any view, only matter of description."

In the case of Jackson v. Barringer, 15 Johns. Rep. 471, the doctrine in the case of Mann v. Pearson, is reviewed and ap- proved, in the broadest and most unequivocal language.   The same doctrine has been held by the other States of the Union, where they have been called upon to decide it, without a single case of dissent, so far as I have been able to find.   (Jolliffe v. Hite, 1 Call's Rep. 301; Grantland v. Wight, 2 Munf. Rep. 179; Jackson v. Moore, 6 Cow. Rep. 706 ; and Allison v. Alli- son, 1 Yerg. Rep. 16.)

The case of Powell v. Clark, 5 Mass. Rep. 355, was an action for covenant broken.   The plaintiff declared upon a deed, by which the defendant had conveyed to him, two several tracts of land.   Both tracts were described in the deed, by certain desig- nations, and by metes and bounds ; and after this description of

one of the tracts, immediately followed the words "containing "twenty-nine acres and twelve rods of ground;" and immediately after the description of the other tract, followed the words, "containing six acres and one hundred and thirty rods of "ground;" and claimed compensation for an alleged deficiency in the quantity of land.

In delivering the opinion of the court, in that case, Ch. J. Parsons said, "If the boundaries of the tract here had included "more than the quantity expressed, yet all within those boun-"daries, which the defendant had a right to convey, would have "passed by the deed. So, if less was contained, the plaintiff "has title only to what was in fact included. In his purchase, he "must therefore be considered as relying on the boundaries de-"scribed, and not on the contents mentioned."—"In a convey-"ance of land by deed, in which the land is certainly bounded, "it is very immaterial whether any or what quantity is ex-'pressed; for the description by the boundaries is conclusive."

In the case of Stebbins v. Eddy, 4 Mas. Rep. 414, it is held, that if land be sold by certain boundaries, or for so much, by the entire parcel, or by the lump, *per aversionem*, in the language of the civilians, as for a field inclosed, or an island in a river, which is a distinct and entire object, any surplus of land over the quantity specified, belongs to the vendee, and the price cannot be increased or diminished, on account of a disagreement in measure or quantity. Also, see Smith v. Ware, 13 Johns. Rep. 257. In this last case, the court say that, even an express promise to make compensation for a deficiency, in such a case, is void, for the want of consideration.

In the case of Voorhees v. De Meyer, 2 Barb. Rep. 37, it is held, that where a tract of land is sold for a sum in gross, the boudaries of the tract control the description of the quantity it contains, and neither party can have a remedy against the other, for any excess or deficiency in the quantity.

But it may be said, that the defendants were mistaken as to the true quantity of land being sold, and that equity relieves against mistakes. Now, it is true, as a general rule, that equity

will relieve against mistakes. But it is not against a wrong guess, or a careless supposition, that equity will relieve. Where all the essential facts of a case, may be easily ascertained by a party, if, instead of availing himself of the means of knowledge in his power, he chooses to act upon a guess, or supposition, he cannot afterwards be permitted to set up his wilful negligence or ignorance, and claim relief from the consequences of his acts, on the ground of mistake; the law favors the vigilant, but not those who slumber over, or act careless of, their rights. And it is not sufficient to entitle a party to relief, that the fact about which he was mistaken, is a material one; but it must be such an one, as he could not, by reasonable diligence, get a knowledge of, when put upon inquiry; for if, by such reasonable diligence, he could have obtained a true knowledge of the fact, equity will not relieve him; since that would be to encourage culpable negligence. (Story's Eq. Jur. §§ 146, 147; Penny v. Martin, 4 Johns. Ch. Rep. 566.)

In the case of Martin v. Bennett, 26 Wend. Rep. 169, it is held, that "equity will not relieve against a mistake in the "conveyance of lands, in respect to the quantity conveyed, un- "less the quantity constitute a condition of the sale, as agreed "upon between the parties; nor will relief be granted, if the "party seeking relief could, by ordinary vigilance, before the "completion of the contract, by viewing the premises, or pro- "perly settling the terms of the description, have guarded "against the mistake."

Then, where the means of ascertaining the true quantity of a tract of land, is within the reach of both parties, and they choose not to avail themselves of those means of knowledge, but buy or sell the land by its boundaries, and describe it as containing, by estimation, a certain quantity of acres, if the transaction be *bonâ fide*, and both parties be equally under a mistake as to the quantity, but not as to the boundaries, the sale will be binding upon both of them, whether the tract contain more or fewer acres than the quantity expressed in the deed. (Story's Eq. Jur. § 144 *a*; Morris Canal Co. v. Emmett, 9 Paige's

10

Rep. 168; Stebbins v. Eddy, 4 Mas. Rep. 414; Marvin v. Bennett, 8 Paige's Rep. 312, which case is also reported in 26 Wend. Rep. 169; Jackson v. McConnell, 19 Wend. Rep. 175; Lush v. Druse, 4 Wend. Rep. 313; Butterfield v. Cooper, 6 Cow. Rep. 481; Smith v. Evans, 6 Binn. Rep. 102; Boar v. McCormick, 1 Serg. & R. Rep. 166; Glenn v. Glenn, 4 Serg. & R. Rep. 488; Philips v. Scott, 2 Watts's Rep. 318.)

Now, in this case, the parties committed no mistake in regard to the tract of land they desired to have sold. The jury have expressly found that their attorney did not commit any mistake, in the petition to the Probate Court, for the sale of the land, but that he petitioned for the sale of the identical land which they had instructed him to do; and that was, all the land contained within the boundaries described in their bond to Matthew W. Lindsay, deceased. Mrs. Lindsay became a purchaser of the land, on the faith of their own estimate; she is a purchaser in good faith, for a valuable consideration: and even admitting that the defendants acted under a misapprehension of their rights in the premises, still they would not be entitled to relief. (1 Mad. Ch. Rep. 62.)

Again, if it be a fact, that Mrs. Lindsay only bought 1780 acres of the land, then the defendants could not have sold her the surplus, over that amount, which is contained in the tract. Then, by what authority can the court assume to make a contract for the parties, to which neither have assented? By the decree of the court, Mrs. Lindsay is compelled to take and pay for land which it is asserted she never bought, and the defendants are made to part with the title to land, which it is also asserted they never sold. The hypothesis of the court, founded on the finding of the jury, is, that Mrs. Lindsay never bought, and the defendants never sold, more than 1780 acres of the tract. But, assuming that hypothesis to be true, do they not most clearly err? It is not competent for the court to make contracts for parties,—it can only enforce such as the parties themselves have made; and if Mrs. Lindsay only bought 1780 acres, and the defendants only sold 1780 acres of the tract, then the judg-

ment of the court ought to have been for the plaintiffs, for 1780 acres only, and for the costs of court. Either the finding of the jury is wrong, or the judgment of the court is wrong, or else both are wrong, and we insist it is the latter.

We therefore conclude, that both the finding of the jury and the judgment of the court, are wrong; and if we are correct in that conclusion, the cause will be reversed and reformed, giving to the plaintiffs all the land included in the bond of the defendants to M. W. Lindsay, deceased, and the costs of suit.

To the first and third assignments of error, made by the defendants, it is perhaps sufficient to say, they are estopped by their own acts. The maxim is, *allegans contraria non est audiendus*. It is the rule, both of law and equity, that a man shall not be permitted, himself, to substantiate a claim, or to enforce a defence, by reason of representations or acts which proceed from himself, but that every one is held to the consequences of his own acts. The defendants cannot be permitted to blow hot and cold; by obtaining a sale of the land, through the Probate Court, they impliedly declared to the world that, so far at least as they were concerned, a good title could be made to the purchaser under that order of sale. It was in fact their own title which they procured to be put up for sale; and to permit them to come in now, after they have received payment for the land, and successfully resist the purchaser's right to it, would, we think, be a palpable violation of the rule, that no one shall be permitted to take advantage of his own wrong; and this never can be done while laws are administered by fixed rules, founded in the spirit of justice.

If it was incompetent to pass the title out of Mrs. Rust, in this way, then their receipt of the purchase money, from a purchaser in good faith, and their present attempt to retain both the land and the money, is an act of venality, we feel sure no court can ever tolerate, or sanction with its approval.

But the statutory mode, by which married women may dispose of their separate property, is not the only one by which such

a disposition may be made. (Womack v. Womack, 8 Tex. Rep. 397.)

To the second assignment of error by the defendants, it is perhaps sufficient to say, that the finding of the jury has settled the fact, that Mrs. Lindsay bought by the western boundary line, as described in the bond of defendants to Matthew W. Lindsay, deceased; and there can be no pretense, that the finding of the jury, in that respect, is wrong. We conclude, therefore, that there is no error in the record, which affects the defendants adversely; that the errors on the record, are all against the interest of the plaintiffs; that the defendants have no cause of complaint; and that the judgment of the District Court, cannot be affected by anything they have alleged against it.

*W. E. Goodrich*, for defendants in error. There is no error in the proceedings in the court below, of which the plaintiffs have a right to complain. If there be any error in the decree of the court below, it is this,—that the plaintiffs should have been dismissed, at their costs; or the land, as surveyed by Cummings, should only have been decreed them; or only one half of the land purchased, the interest of Caroline Stuart; Phœbe Rust never having conveyed her interest.

The administrator, Greenwood, under order of the Probate Court, conveyed a greater interest than he himself possessed. The defendants had only given their bond to make title, and Greenwood assumed to convey the fee. This contravenes the well established principle of law, "that no one can "convey a greater interest than he himself possesses." The Probate Court is not a court of equity jurisdiction, and consequently could not decree title to Virginia Lindsay. The only tribunal, in which they could get relief, was the District Court; and before a decree should have been rendered for the plaintiffs, the balance of the purchase money due upon the land claimed, should have been tendered to the defendants. "A party

seeking equity must do equity," is a well established rule in equity jurisprudence.

The western line of the Cummings survey, should have been the western line of the land decreed to plaintiffs, if any should have been decreed to them. The jury find that this line was ccepted by Matthew W. Lindsay. The plaintiff, Virginia Dalton, could only have purchased the interest of M. W. Lindsay, which was sold by order of the Probate Court; and if this line was accepted by him, and binding upon him, it must also be binding upon the purchaser of his interest. "A parol partition "of land, is not obnoxious to our statute of frauds, but is valid "and binding." (Stuart v. Baker, 17 Tex. Rep. 417.) It is believed, that the settlement of a division line, would be as little obnoxious. The jury say, that they are not of the opinion, that either Mrs. Rust, or Mrs. Stuart, were acquainted with the change of survey; but this avails the plaintiffs nothing, for it is held in the case referred to, (Stuart v. Baker,) that the purchaser of a married woman's interest in an estate, cannot object to a parol partition of a tract of land purchased, on the ground that she was not bound by such partition.

The third error assigned by defendants, is, that Phœbe Rust had never conveyed her interest in the land, in such a manner as to bind her; and, therefore, the decree for her half interest in it, was not sanctioned by law, she never having been examined privily and apart from her husband. (Hart. Dig. Art. 174.) Had Phœbe Rust's name not been joined with the other defendants in this suit, in the petition to the Probate Court for an order to sell the land, to enforce the vendor's lien, there could be no possible question of her right to judgment under this plea. Nor does it admit of much doubt, as it is.

The restriction upon the right of a married woman to dispose of her separate property, is for her benefit; otherwise, there might be danger that her act, in executing the conveyance, might not be voluntary, but coerced by the husband. (Womack v. Womack, 8 Tex. Rep. 397.) What is there to take this case out of the operation of this rule? Nothing, save the sale of the

land, under the order of the Probate Court, upon the petition of this defendant, with others. This provision of our statutes, (Hart. Dig. Art. 174,) is certainly very lame, if the facts in this case be sufficient to take it out of the operation of the rule. It is an every day occurrence, that suits are brought for married women, without their having any knowledge of the matter; the husbands alone having given the authority to the lawyers to institute suit. And if a judgment of this character be sufficient to estop a married woman from setting up a claim to land, in the conveyance of which, she has made no separate acknowledgment, the very object of the law—her protection from the undue influence of the husband—will be destroyed. Let a husband coerce his wife to sign a bond for title; the purchaser dies, and the husband employs a lawyer to bring suit for himself and wife, for the purchase money; the land is sold by order of court; and the wife, having no knowledge of the matter, is divested of her estate, notwithstanding the law, made for her benefit, requiring her separate acknowledgment.

In Rhea v. Rhenner, 1 Pet. Rep. 105, in a case from the State of Maryland, it is said, that, "the separate examination, and other "solemnities, required by law, are indispensable, and must not "be omitted." We presume the law of Maryland is similar to our own.

In the case of Wright v. Hays, 10 Tex. Rep. 130, our court has established an exception to this rule; but it was done expressly in consequence of the desertion of the wife by the husband, he having been absent from her, from 1836 to 1841, the time of her executing the conveyance; the land conveyed, too, had been conveyed to her after her desertion by the husband. In Womack v. Womack, 8 Tex. Rep. 397, it is held, that the statute, which prescribes the mode of conveying the wife's separate property, does not expressly declare any other mode of conveyance to be absolutely void, but it shows every equity to have been on the side of sustaining the conveyance. Perhaps no single exception to this rule can be found. In this case, however, every equity is in favor of the defendant, Phœbe Rust.

She never acquiesced in the conveyance, but retained possession of the land.    This is evidenced by the fact, that suit was instituted against her, by the plaintiffs, for the land in controversy.

The jury find that only 1780 acres of land were sold; that Mrs. Dalton was aware, at the time of the sale of the land, that her former husband only claimed 1780 acres; that she only believed herself to be purchasing that amount of land; and that the defendants had only been paid for 1780 acres, or perhaps a fraction over; yet the plaintiffs now set up claim for $2159\frac{1}{2}$ acres of land: so that, in point of equity, the claim of the plaintiffs does not commend itself to the conscience of the court. Had this appeal been prosecuted by the plaintiffs, the defendants would have remained perfectly satisfied with the decision of the court below, as it gave them their just rights, and no more, the two dollars per acre for the land claimed to have been purchased.

BELL, J.    On the trial of this cause in the court below, special issues were submitted to the jury, and the court rendered its judgment upon the responses of the jury to the issues submitted to them.    In consequence of this course of proceeding, no instructions were given the jury; and in order to ascertain the views which the judge, who tried the cause below, entertained of the law of the case, we are obliged to look to the judgment itself, in connection with the verdict.

The plaintiffs below, who are also the plaintiffs in error, assign for error, the finding of the jury upon several of the issues submitted to them.    The sixth and seventh errors assigned by the plaintiff, involve the whole merits of the case; and we do not think it necessary separately to consider all the errors assigned, inasmuch as the decision of the cause will turn upon a few general considerations presented by both parties.

The record discloses the fact, that the defendants in error, Rust and wife, and Caroline Stuart, sold to one Matthew W. Lindsay, a tract of land, and executed bond for title to said Lindsay, who was the former husband of Virginia Dalton, one

of the plaintiffs. The title bond to Lindsay was executed in June, 1853. Lindsay paid a portion of the purchase money, and died some time in the year 1854. At the January term of the County Court, for the year 1855, Edwin Rust and his wife Phœbe, and Caroline Stuart, filed their petition in said court, representing that the estate of Lindsay was indebted to them for the balance of the purchase money of the land described in their bond. They made their bond to Lindsay a part of their petition, represented that they had sold to Lindsay the land described in the bond, and prayed that the same might be sold by the administrator, Greenwood, in satisfaction of their claim. They mentioned the land as containing about 1780 acres. The County Court ordered the administrator to sell the land. The administrator advertised the land, giving a general description of it, as situated on York's creek, about fifteen miles north of Seguin, and containing about seventeen hundred and eighty acres. In pursuance of the order of court, the administrator sold the land, and Mrs. Virginia Dalton became the purchaser, for the round sum of twenty-seven hundred dollars, the land being offered in bulk by the administrator.

The administrator received the $2,700 from Mrs. Dalton, and paid off the claim of Rust and wife, and Caroline Stuart, out of the money. The administrator made due return of the sale to the County Court, and that court confirmed the sale, and ordered the administrator tô make title to Mrs. Dalton, describing the land according to the bond of Rust and wife, and Caroline Stuart, to M. W. Lindsay. On the 30th of April, 1857, Mrs. Dalton, and her husband, R. H. Dalton, brought suit to recover the land, according to the description contained in the original title bond to Lindsay, and in the deed of the administrator, Greenwood, to Mrs. Virginia Dalton. The defendants resisted the suit, on the ground that Phœbe Rust, the wife of Edwin Rust, had never acknowledged the execution of the title bond to Lindsay, in the manner required by law, in cases of sales of separate property by married women; and on the further ground, that, during Lindsay's lifetime, there had been a sur-

vey of the land, to which he had assented, changing the boundaries from those contained in the bond. Defendants alleged that they never intended to ask the County Court for the sale of the land actually described in the bond, and that their attorney made a mistake in asking for the sale according to the bond. They alleged that Lindsay, in his lifetime, only claimed 1780 acres, according to a survey made by one J. W. Cummings; that the administrator, Greenwood, only sold, or intended to sell, 1780 acres; and that Mrs. Dalton supposed that she was purchasing only 1780 acres. There was evidence that, in Lindsay's lifetime, a survey was made by Cummings, though not in accordance with the bond, and at the request, and according to the instructions of Rust. Lindsay was not present when this survey was made. There was no proof that a plot of the survey, by Cummings, was ever exhibited to Lindsay; and there was no proof that Lindsay, and either of his vendors, had ever made any agreement, or had ever had any conversation, about the survey made by Cummings. One witness stated that he had been with Lindsay, on the principal line of the survey made by Cummings, had shown him where the line ran, and that Lindsay said he was satisfied with it.

It is proper to state, also, that the original title bond, from the defendants to Lindsay, stipulated for the sale of the land described, at the price of two dollars per acre.

The jury found, by their verdict, that the attorney of the defendants, Rust and wife, and Caroline Stuart, did not commit any mistake in asking the County Court for the sale of the land, according to the title bond. The jury found also, that the land, described in the bond, contained twenty-three hundred and ten and a half acres, less one hundred and fifty acres, known as the Ward survey, which had been excepted out of the sale, by the terms of the bond. They found the other principal facts as herein before stated.

The court gave judgment for all the land described in the bond, less the Ward tract, in favor of Mrs. Dalton and her husband; and further judgment, that Mrs. Dalton and husband should

pay to the defendants two dollars per acre, for the excess of the land over and above 1780 acres, which was ascertained to amount to the sum of nine hundred and fifty-six $\frac{80}{100}$ dollars.

We are of opinion that there was error in the judgment, in requiring the plaintiffs to pay to the defendants the value of the excess of the land described in the bond, over and above 1780 acres, at the rate of two dollars per acre. Without inquiring into the sufficiency or competency of the evidence to establish the fact that Lindsay, in his lifetime, ever assented to any other boundaries than those contained in the bond, we think the defendants are estopped, by their own acts, from asserting any claim against the plaintiffs for any portion of the land described in the bond. The defendants themselves asserted in the County Court, that they had sold the land described in the bond, to Lindsay. They procured the sale of the same land by the administrator, Greenwood, and received payment out of the money paid by Mrs. Dalton for the land. The whole controversy relative to the number of acres contained in the description given in the bond, seems to have arisen subsequent to the administrator's sale. There is no pretence of any fraud or concealment on the part of Mrs. Dalton, or that she had any better means of ascertaining how many acres of land were included in the description contained in the bond, than the defendants, or any other person, had. All parties seem to have adopted the idea, that Lindsay had purchased 1780 acres of land, and that his administrator sold 1780 acres. It is a well settled principle, that where land is sold by metes and bounds, the recital of the number of acres is mere matter of description, and is not supposed to influence the contract of the parties; inasmuch as men may easily err in the estimate of the number of acres within certain lines, but cannot err as to where marks or monuments, or natural objects, are on the earth's surface.

It is also equally well settled, that courts of equity cannot relieve against a mistake as to the number of acres contained in a tract or parcel of land, sold by metes and bounds, where there

is no element of fraud.   (1 Story's Eq. Jur. § 144 a, and autho-
rities there cited.)

We are of opinion, that Phœbe Rust, the wife of Edwin Rust,
was estopped from setting up any defect in the original bond for
title, by her action in the County Court, and by the fact that
she afterwards received the purchase money,

The judgment ought to have been for the plaintiffs, for the
land described in the title bond to M. W. Lindsay, and for their
costs.   The judgment of the court below is therefore reversed,
and the cause remanded for further proceedings, in conformity
with this opinion.

Reversed and remanded.