## STUART v. DENMAN.

### No. 14517.

Court of Civil Appeals of Texas.
Fort Worth.

April 22, 1943.

Rehearing Denied June 11, 1943.

R. V. Nichols and R. A. Stuart, both of Fort Worth, for appellant.

Aubrey Alexander, B. K. Goree, Thompson, Walker, Smith & Shannon, and Luther Hudson, all of Fort Worth, for appellee.

SPEER, Justice.

This suit was instituted by O. H. Denman against Robert A. Stuart, seeking an equitable recovery for restitution of a part of the consideration paid for a tract of land alleged to be short in acreage, growing out of a mutual mistake between the parties at the time of a deal closed November 30, 1937.

In so far as is necessary to here state plaintiff's pleadings upon which he went to trial, they are: That the parties closed a deal on the date mentioned by which they exchanged tracts of land, defendant Stuart taking a tract of about 317 acres in Tarrant County, upon the basis of $65 per acre, and plaintiff Denman taking a 1600 acre tract in Bosque County, at $15 per acre. The difference in values was alleged to have been adjusted. That each party went into possession of the tract purchased shortly after November 30, 1937, and when Denman sold his acreage in 1941, it was surveyed and found to be approximately 100 acres short of what both he and defendant Stuart had believed to be in the tract at the time the deal was closed. Plaintiff sought the equitable relief of having restored to him by Stuart the price he had so paid to Stuart for the shortage at the rate of $15 per acre, caused by the mutual mistake of the parties at the time of making the deal.

Defendant Stuart answered with a general denial and specially denied that the exchange of lands was made on a basis of so much per acre for the respective tracts, but that the parties exchanged their lands in gross as they stood, each previously having inspected the particular tract to be taken by him. Defendant also pleaded specially that any claim plaintiff may have had against him in said matter was barred by the two and four year statutes of limitation.

On a special issues verdict, judgment was entered for plaintiff in a sum aggregating $15 per acre for the shortage of 99 and a fraction acres. From that judgment defendant Stuart has appealed.

First point relied upon by defendant is, in substance, that the court erred in overruling his contention that plaintiff's asserted cause of action was barred by both the two and four year statutes of limitation.

It is apparently conceded that the deal was closed and deeds passed on November 30, 1937. The original petition in this case was filed on October 11, 1941. The petition is in the record and we have observed its contents. On May 26, 1942, an amended petition was filed, upon which trial was had. By the amended petition former allegations of breach of contract and breach of warranty were abandoned, and by the amendment relief is sought alone upon the equitable grounds of restitution because of an alleged mutual mistake relating to the number of acres contained in the Bosque County tract. We note that the amended pleading is based upon the identical transaction and occurrence between the parties

as that set out in the original petition. In such circumstances the relief sought by the amended pleading is not subject to limitation if the original petition did not fall within such restrictions. The effect of the amendment will be considered as of the date of the original. The original petition was filed within four years after the closing of the transaction and it must follow that the four year statute of limitation did not bar plaintiff's claim on account of the lapse of time. Article 5539b, Vernon's Tex. Civ.St.; Colbert v. Dallas Joint Stock Land Bank, 136 Tex. 268, 150 S.W.2d 771; Hodges v. Price, Tex.Civ.App., 163 S.W.2d 868, writ refused, want of merit; Tilley v. Winfrey, Tex.Civ.App., 165 S.W.2d 476, writ refused.

■ In this particular class of suit, we think limitation is controlled by Art. 5529, Vernon's Ann.Civ.St. There it is provided that every action other than for the recovery of land, for which no limitation is otherwise prescribed, shall be brought within four years next after the cause of action arises and not thereafter. If we properly interpret plaintiff's pleadings, this suit was one in which the pleader sought restitution of moneys paid by him to defendant on account of a mutual mistake as to the number of acres contained in the Bosque County tract, and involves an equitable right to have restored to him the purchase price paid for so much of the land not received.

It is contended by defendant (appellant) that any equitable right of restitution for moneys paid by plaintiff for shortage in acreage on account of mutual mistake, was barred by the two year statute of limitation. In support of that contention defendant cites and relies upon Smith v. Fly, 24 Tex. 345, 76 Am.Dec. 109, and Bass v. James, 83 Tex. 110, 18 S.W. 336. The first-cited case was decided prior to the enactment of Article 5529, supra. That case, like the instant one, involved an equitable right of restitution of an overpayment on account of a shortage in acreage brought about by a mutual mistake. The court applied the then existing statute of two year limitations, as contended for here by defendant. But the language used by the court clearly reflects that this was done because of analogous facts there, to a situation covered by the statute thus applied. Perhaps that frank discussion had something to do with the subsequent enactment of Article 5529.

Bass v. James, supra, was decided after the enactment of Art. 5529, and followed the reasoning announced in Smith v. Fly, supra. But, as stated in Blount v. Bleker, 13 Tex.Civ.App. 227, 35 S.W. 863, the court in Bass v. James, supra, followed Smith v. Fly, supra, apparently without a consideration of the change theretofore made in the statute. Many authorities are cited where the Supreme Court had held, since the passage of Article 5529, that it applied to cases like the one there under consideration and the one now before us.

In Gordon v. Rhodes & Daniel, 102 Tex. 300, 116 S.W. 40, the distinction between actions for deceit and fraud concerning lands and actions in equity for recovery of moneys paid when acreage was short because of mutual mistake was involved. Much of that opinion is devoted to the application of the long-time existing two year statute prior to the passage of Article 5529, supra. It is clear to us that by what is there said the holding in Smith v. Fly, 24 Tex. 345, 76 Am.Dec. 109, above cited, is not applicable to this case since the enactment of Article 5529, supra.

In Gillespie v. Gray, Tex.Civ.App., 230 S.W. 1027, writ refused, it was held that where a quantity of land was purchased by the acre and the acreage misrepresented by the seller, the buyer's remedy was one in equity and not a suit on the warranty; that the four year statute of limitation, and not that of two years, was applicable as against such action in equity. See, also, Hohertz v. Durham, Tex.Civ.App., 224 S. W. 549.

In response to special issues the jury found (1) that the exchange of lands between the parties was upon an acreage basis and the agreed price per acre, (2) the agreed price per acre of the Bosque County land was $15, (3) there were 1500.4 acres in the Bosque County tract, (4, 5 and requested issue 2) plaintiff did not know and by the exercise of due diligence could not have known there were less than 1600 acres in the tract prior to October 11, 1939, October 11, 1937, or November 30, 1937. It is argued by defendant that these findings are contrary to the testimony offered. Much of the large volume of transcribed testimony is devoted to this controversy.

The written contract between the parties (apparently drawn by Stuart) reveals that Denman owned (as he thought) 326 acres in Tarrant County, and appellant Stuart owned (as he thought) 1728 acres in

Bosque County. The Bosque County land had an encumbrance against it, the Tarrant County land had none. Denman did not want to purchase and be required to pay for one part of the 1728 acres upon which there was then being constructed a rather expensive brick house. The parties agreed for Stuart to deduct from the whole tract 128 acres containing the new improvements and convey to Denman the remaining 1600 acres, in exchange for his Tarrant County land. Stuart would reduce the indebtedness against his ranch land to $5,500. From this it is apparent to us that each, in good faith, thought he owned the number of acres so represented by him. It also appears that Stuart's equity in the ranch land was not equal to the value of Denman's 326 acres. The difference seems to have been intended to be covered by a sale by Stuart to Denman of 808 goats then on the ranch. Nothing is said in the contract as to the value of either tract by the acre nor of the value of the 808 goats per head. Before the sale was closed Stuart had the Tarrant County land surveyed and found it 9 acres short and Denman made the shortage good at the rate of $65 per acre; they then readjusted their differences by Denman assuming more indebtedness against the ranch land and buying more goats, some of which goats were paid for in cash. Denman said their respective valuations of land were based upon his land at $65 per acre and Stuart's at $15 per acre. Stuart testified he did not figure either at those prices, but did say he had listed his ranch lands with the agent who consummated the deal, at $15 per acre. Stuart's deed recited the consideration for the 1600 acres described, as $24,000, and the land conveyed was described by elaborate field notes as being in two tracts, one of 1426 acres and the other of 173.6, more or less. The jury found that the exchange was upon an acreage basis, valuing Stuart's land at $15 per acre.

▌ Under the point before us, Stuart argues that by the exercise of due diligence Denman could and should have discovered the 1600 acres purported to be conveyed was short in quantity. This contention is based upon a title-letter written to Denman by the attorney who examined the abstract in which he pointed out a shortage of 18 acres in a part of one survey mentioned in the deed. The testimony showed that the examiner subsequently concluded

that he was wrong about that shortage, but at the conclusion of his second letter, he instructed the buyer (Denman) to satisfy himself from survey or otherwise that the entire acreage was in the tract and warned against adverse possession, conflict in lines, corners, fences and possible liens for improvements within the past four months. Denman testified that Stuart told him the land had been surveyed by his immediate predecessor in title; Stuart testified that he told Denman he did not know of his own knowledge but believed it had thus been surveyed. He also testified in effect that since Denman's title examiner had raised the question about the acreage, he did not know whether it was all there or not. Denman testified that he could have had the land surveyed at any time, but his attorney had said that what he thought was a shortage had been explained to his satisfaction and that it was then all straightened out, and for these reasons he did not have the land surveyed.

In Hohertz v. Durham, Tex.Civ.App., 224 S.W. 549, a very similar situation was considered to that before us. There the purchaser tried to get a surveyor to survey the land before he purchased it, and his request was declined because the surveyor said he had once surveyed the tract and knew it contained the acreage represented. It was held this was sufficient to raise the jury issue of fact as to whether the purchaser had exercised due diligence. In the instant case the jury found as a fact that Denman did not know nor could he have known by the exercise of due diligence of the shortage at the times inquired about. Under the facts before the jury we do not feel at liberty to disturb its finding in this respect. It is apparent to us that both parties acted in good faith while dealing with each other, and we are forced to the conclusion that a mutual mistake occurred. See, also, Cox v. Barton, Tex.Com.App., 212 S.W. 652. The point under consideration and its related assignments of error are overruled.

▌ Second point presented asserts error in the measure of "damages" applied by the court, in that the plaintiff was awarded a judgment for an amount equal to the $15 per acre times 99.6 acres, shown to be the shortage. This point must be sustained. However, we cannot accurately designate plaintiff's recovery as "damages". He did not sue for a breach of a contract nor for damages for a failure to perform a contract of sale; but for restitution in equity

for an excess sum paid by him, caused by a mutual mistake, for something he did not receive.

Upon the trial Stuart offered to prove that the lands conveyed by him and received by Denman had upon them valuable improvements consisting of two sets of dwelling houses, necessary outhouses, barns, etc., and a valuable deep well. Upon objections by plaintiff the proffered testimony was excluded. The bill of exception was completed and if defendant had been permitted, he would have testified as to the nature of the improvements and that their value was approximately $10,000. We think this testimony should have been admitted. It is not contended by Denman that he did not receive all that was on the land of which he took possession, under the deed. It is obvious that all improvements on lands tend to enhance the value of the whole tract per acre. It is also apparent that the greater the value of improvements upon a smaller tract, the greater will be the enhancement per acre. Conversely the greater the acreage the less enhancement per acre will follow from the improvements, actually received. Since the court excluded the testimony tendered, whereby defendant sought to show the value of the improvements, neither the jury nor the court could properly give effect thereto in arriving at the value per acre of the land, for which plaintiff paid and did not receive.

We have seen no case by a court in this state which involves the precise point before us. Our courts have had occasion several times to discuss the equitable right of restitution by a purchaser resulting from deceit, fraud or mutual mistake when lands are sold by the acre, as well also the equitable right of rebate on the purchase price when promised, based upon the same theory. But none has reached the question of how to arrive at the compensation or rebate, when, as here, a substantial amount of the purchase price was obviously made up of valuable improvements actually received by the purchaser. As we view the facts of this case, this matter is very material, since the recovery was for the value of the shortage at the average price of $15 per acre, without reference to the improvements.

Every one knows that where a tract of land contains improvements of a considerable value, each acre is enhanced in value ratably with the nature of those improvements. If in this case the improvements were worth approximately $10,000, as com-

pared to the total consideration of $24,000, recited to be the consideration for the whole tract, and if plaintiff received those improvements, then to again add that enhancement per acre to the shortage, we think it would be a double recovery to the extent of the enhancement per acre on the shortage.

A case in point, we think, is Tinsley v. Hearn et al., 136 Tenn. 586, 191 S.W. 127. There a purchase was made of what purported to be 66 acres of improved land, for a consideration of $4,250. The improvements were worth $1,250. It subsequently developed that the tract was 10 acres short. The trial court decreed to the purchaser a recovery for the shortage at an average valuation of the whole acreage which included the improvements, as was done in the instant case. That court held this to be an erroneous theory by which to arrive at the amount of recovery. Court said in this connection: "The failure to get some of the land he bought must therefore have reference to the portion on which the improvements were not located." Based upon the case of Stow v. Bozeman's Ex'rs, 29 Ala. 397, it was held that the restitution to the purchaser should be ascertained by deducting the value of the improvements from the whole consideration paid and then divide the remainder by the number of acres contracted to be sold to ascertain the average price per acre, and the recovery should be for that average price per acre for the shortage. See, also, 66 C.J. 1020, § 759, and footnotes.

■ The courts of this state seem not to have had occasion to announce a principle governing such cases as the instant one. But in many cases our courts have discussed the theory and manner of measuring the recovery by a purchaser when he sues for equitable restitution or rebate of the purchase price of land when found to be substantially short in quantity, occasioned either by deceit, fraud or mutual mistake. The general rule in such cases seems to be that where he has paid the consideration, he may recover the difference, if any, at the time of the transaction, in the value of what he received and the value at that time of what he contracted for, but failed to receive because of the deceit, fraud or mistake, with interest from the date of the transaction. George v. Hesse, 100 Tex. 44, 93 S.W. 107, 8 L.R.A.,N.S., 804, 123 Am.St. Rep. 772, 15 Ann. Cas. 456; Vogt v. Smalley, Tex.Com.App.,

210 S.W. 511; Gillispie v. Gray, Tex.Civ. App., 214 S.W. 730; Gillespie v. Gray, Tex. Civ.App., 230 S.W. 1027, writ refused; Patterson v. McMinn, Tex.Civ.App., 152 S. W. 223; Taylor v. Hill, Tex.Com.App., 221 S.W. 267. It must be remembered that this is an action in equity to right a wrong alleged to have been brought about without fault of either party—by a mutual mistake. To accomplish the purpose sought, it would be manifestly wrong to permit plaintiff to recover the average or agreed price of $15 per acre for the shortage in quantity, when it is apparent that a substantial portion of that $15 per acre was occasioned by valuable improvements, all of which he must have received with the land which he took possession of. Since the testimony as to the value of improvements was excluded and their effect upon the value per acre could not be determined, no one is in a position to say what effect their value had per acre on any of the land.

■■ We are forced to the conclusion that the amount of plaintiff's recovery was based upon the wrong theory in this case and hold that upon another trial the court should admit testimony bearing upon the value of the improvements and by appropriate issues have the jury, if one is had, determine their value at the time of closing the deal; deduct that amount from the contract price agreed to be paid in money or the value of property given in exchange and from the remainder ascertain the average amount per acre agreed to be paid for the entire 1600 acres (if that be the amount agreed to be conveyed) and thus find the price per acre. The measure of plaintiff's right of restitution will be that average price times the number of acres which plaintiff failed to receive, with interest from November 30, 1937.

■ Third point presented asserts error because no issue was submitted to the jury inquiring whether or not a mutual mistake occurred at the time the deal was made. It is contended by defendant that since plaintiff's alleged cause of action was based upon equitable relief because of a mutual mistake, and because there was conflicting testimony on the point, plaintiff should have requested and had the issue answered in his favor, before he could recover at all. It is apparent that no such issue was submitted and that neither of the parties requested it, nor was any objection made by either party to the charge because it was not submitted. There was ample testimony to support a finding that a mutual mistake was made at the time, concerning the acreage. With the record in this condition, the fact will be deemed to have been found by the court in such manner as to support the judgment. Rule 279, Rules Texas Civil Procedure. In view of the fact the evidence may not be the same upon another trial, we shall not undertake to decide whether the evidence now before us raises a jury issue in this respect.

Because of the erroneous theory upon which the controlling factor in this case was tried, as discussed above under second point, the judgment will be reversed and the cause remanded for another trial in accordance with the procedure above set out. Reversed and remanded.

### On Motions to Amend Transcript and to Retax Costs

■ Appellant R. A. Stuart has filed a motion to amend the transcript in this case, calling our attention to the fact the bill of costs contained in the transcript did not include the item of expense of procuring the statement of facts. A corrected statement of the costs incurred in the trial court, including the statement of facts properly certified by the district clerk, accompanies the motion. The motion is granted and the amended bill of cost is ordered filed as a supplement to and correction of the cost bill originally contained in the transcript. Rules 428 and 429, Texas Rules Civil Procedure.

■ Appellee O. H. Denman has filed a motion in this court to retax the costs of this appeal. After duly considering said motion we have concluded that under all the facts and circumstances involved, and the disposition of the appeal made by us for the reasons expressed in the opinion, the motion should be sustained. Our former judgment entered in this cause on April 23, 1943, wherein we taxed all costs against appellee O. H. Denman, is hereby, with respect to taxing costs, set aside, and an order will be entered amending said judgment, taxing the costs of this appeal two-thirds against appellee O. H. Denman and one-third against appellant R. A. Stuart. Rule 448, T.R.C.P.

### On Motion for Rehearing.

O. H. Denman, plaintiff below and appellee here, files a vigorous motion for rehearing, in which he earnestly insists that we erred in applying the rule by which the

amount of recovery should be determined. He insists that the proportional rule applied by the trial court is proper. He cites and relies upon Yost v. Mallicote's Adm'r, 77 Va. 610. That case appears to be one in which land was sold in gross and not by the acre. However, as we understand the rule there announced, little distinction is made by the court in the rule applicable to sales in gross and by the acre. That court recognizes the general rule announced by us in the original opinion relating to abatements in such cases, as well also the exception relating to peculiar circumstances. Denman insists that we, like the trial court in Yost v. Mallicote, supra, applied the exception to the rule rather than the settled rule.

Tinsley v. Hearn, 136 Tenn. 586, 191 S.W. 127, cited by us in the original opinion, contains the basis for the conclusions expressed by us. Apparently many of the principles there involved were cited and fully discussed in Lichtenthaler v. Clow, 109 Or. 381, 220 P. 567, 570. That case also involved a sale in gross, but the court collated the authorities from other jurisdictions, many of which involved questions similar to the one in the instant case. That court states that the different jurisdictions are not in harmony on the points. A significant observation is made in that case, substantially as that made by us, to the effect that in an equitable proceeding for an abatement plaintiff should be made whole, but nothing more. It is our theory that to allow plaintiff Denman to recover for the proportionate amount that the improvements benefited each acre, at a time when he had received the improvements, would to that extent be a double recovery. It is said in the cited case that: "Although all the courts reject the proportional rule when the land has on it valuable improvements, all of them do not attempt to prescribe a definite rule for the measurement of damages." The Oregon Supreme Court in the cited case cites with approval the old case of Hoback v. Kilgores, 26 Grat., Va., 442, 21 Am.Rep. 317, wherein it was said: "The just and true measure of compensation is according to the average value of the land without the improvements, considering both together to be worth the contract price [in that case] of $1,400, estimating the quantity of the land, as the parties did, at 127½ acres." The court cites 27 R.C.L. 435, and 2nd Southerland on Damages (4th Ed.), sect. 590, page 2040. In the Lichtenthaler case, supra, this further observation is made concerning the rule of compensation: "The moment the existence of the improvements was shown, that moment the proportional rule became unavailable as a measure of damages, and it then devolved upon the plaintiff [Denman in this case] to show a situation to which some rule of measurement could be properly applied."

This being an equitable proceeding for the recovery of an excess payment made for land not received by the purchaser, but in a situation where there were valuable improvements on the land actually received by the purchaser, we believe we have adopted a fair and just rule which after all is applicable to equity.

The motion for rehearing is overruled.