**OUALLINE et ux. v. CHAMPION PAPER & FIBRE CO.**

**No. 4477.**

Court of Civil Appeals of Texas. Beaumont.

Nov. 13, 1947.

Rehearing Denied Dec. 10, 1947.

Pitts & Liles, of Conroe, for appellants.

Vinson, Elkins, Weems & Francis, of Houston, for appellee.

COE, Chief Justice.

This is an appeal from the judgment of the district court of Montgomery County awarding appellee judgment for restitution of a part of the consideration paid for a tract of land found to be short in acreage, based upon the ground of a mutual mistake between the parties.

Appellee alleged that on September 10, 1937 appellants executed and delivered to appellee a deed conveying two tracts of land, the first tract thought to contain 639 acres, the second tract was supposed to contain 34.7 acres; that out of the first tract of 639 acres there was excepted 54 acres owned by other persons, leaving 619.7 acres supposedly sold to appellee; that the land was contracted to be sold and was sold on an acreage basis for a price of $5.50 per acre and the purchase price of $3,408.35 was paid by appellee and accepted by appellant pursuant thereto and that in truth and fact there was a deficiency in the acreage and appellee was entitled to restoration to that part of the purchase price paid for land not received. Appellee further alleged that appellants made certain representations to appellee as to the number of acres in the tract which were fraudulent and made with the intent to deceive the appellee as to the actual number of acres in the tract, and in the alternative plead that there was a mutual mistake between the parties as to the number of acres contained in the tract of land conveyed.

Appellants by their pleadings denied that they had made any representations as to the amount of acres in the tract of land and specially plead that the appellee had notice that there was not 639 acres in the tract. They further plead that they were willing to rescind such sale and restore to the appellee the consideration which they had received, contingent, however, upon the appellee accounting to the appellants for the timber it had cut and removed from said land. They further plead that the sale was not made upon an acreage basis, but was in gross, and specifically denied that there was any mistake in the amount of acreage in said tract.

Upon the trial by the court without a jury the trial court entered a judgment for appellee in the sum of $2,096.32, together with interest at the rate of 6% per annum from the 7th day of April, 1947.

Upon request the court filed findings of fact and conclusions of law. These are, in effect, as follows: That on June 26, 1937 appellant E. A. Oualline entered into a written contract with C. T. Smith, the duly authorized agent and representative of appellee, at a time when said appellant E. A. Oualline knew that said C. T. Smith was acting as the agent of and for the use and benefit of appellee, to sell 585 acres in the Jackson Crouch Survey in Montgomery County, Texas, on an acreage basis at the rate of $5.50 per acre, less all minerals thereunder, and being all of the 639 acre tract except the Kayser 54 acres; that on August 21, 1937 the appellant E. A. Oualline wrote said C. T. Smith, the agent of appellee, offering to sell the company a 34.7 acre tract at the rate of $5.50 per acre; that on September 10, 1937 the appellants executed and delivered to the appellee a general warranty deed conveying to appellee the two tracts of land therein described by metes and bounds, the first tract recited to contain approximately 639 acres, save and except an undivided 54 acre interest owned by the heirs of the Estate of A. L. Kayser, deceased, and a second tract recited to contain 34.7 acres, save and except all minerals under both such tracts; that at the time said appellants entered into the aforesaid contract and wrote the aforesaid letter, and during the entire time that the deal was pending and at the time the appellants executed and delivered the deed to appellee, the said appellant E. A. Oualline, belived in good faith and represented to the said C. T. Smith, the agent and representative of appellee, that he actually owned and there was 639 acres in the first tract described in the deed, and 34.7 acres in the second tract described in the deed, and that at the time the appellants executed and delivered said deed to appellee they both

in good faith believed that they actually owned and were conveying to appellee 619.7 acres of land; that appellee, through its duly authorized agent, honestly and in good faith believed that appellants in truth and in fact owned 619.7 acres in the two tracts of land described in said deed; that appellee paid and appellants accepted the sum of $5.50 per acre for 619.7 acres, and the payment of such sum by appellee and the acceptance thereof by appellants was the result of a mutual mistake; that on or about July 15, 1941 appellee caused a survey of the above tract of land to be made and by actual survey on the ground it was found and determined that said tract contained only 343.74 acres, resulting in a deficiency of 295.26; and that appellee, by its pleadings, limited the shortage or deficiency of acreage to 242.9 acres and concluded that appellee was entitled to recover from the appellants the sum of $1,331, together with interest thereon from September 10, 1937 to the date of this judgment, in the sum of $765.32, together with interest at the rate of six percent per annum from the date of judgment until paid, and entered judgment in accordance therewith.

Appellants present four points upon which they rely for a reversal and rendition of this cause or in the alternative a reversal and remand. By its first point appellant contends that the trial court was in error in holding that there was a mutual mistake between appellants and appellee at the time of the purchase of the land in question as to the quantity of acreage in the tract; and second that it being uncontroverted that prior to the closing of the transaction between the appellants and appellee that the appellee could have in advance ascertained the number of acres involved in this cause and having failed to do so, equity will not grant appellee any relief on the ground of mutual mistake; and third that the trial court erred in rendering judgment, based upon a mutual mistake, because the appellee was guilty of negligence as a matter of law in not having the land involved herein surveyed prior to the consummation of the transaction; and fourth that the evidence failed to show a mutual mistake and failed to show that had the appellee known of the shortage of acres it would not have consummated the transaction, therefore the court erred in entering a judgment for appellee. Appellants contend that the evidence conclusively shows that at the time of the consummation of the deal involving the sale of the land by appellants to appellee that appellee knew that the tract described as containing approximately 639 acres actually contained a far less number of acres and actually knew and was charged with the knowledge that said tract contained only about 400 acres, and having purchased said land knowing said tract only contained some 400 acres, that they should not now be heard to say that there was a mutual mistake as between the parties as to the number of acres conveyed. Appellee bases this contention primarily on the evidence given by the witness P. H. Strauss who was at the time of the transaction here involved and still is an employee of appellee in its land department as a timber estimator and looking after the taxes and matters kindred to the land. This witness testified, in substance, that when an offer of sale to the company is made by any person of land or timber, that it was his duty and that he actually did make an evaluation of the land and timber and report to his company the kind and character of the land as well as the kind and character of the timber; that in doing this work he usually had field notes of the tract of land to be inspected and after having located the land he would go upon the land and "strip walk it" and in this manner he was able to determine, with a reasonable degree of certainty, the quantity and quality of the timber and could reasonably calculate the number of acres contained in the tract; that he was able to take the field notes of the tract of land and compute the number of acres contained in said field notes; that he could survey in a manner, but that the company would hire surveyors to do their surveying. He testified that before the consummation of the deal here involved that he went upon the tract of land conveyed by appellants to appellee and inspected the timber growth thereon; and as a result of his work on said tract of land he was of the opinion that the tract of land described as being 639 acres only contained something like 400 acres, and that he reported his findings relative to the tract of land to

his superiors in due course and before the consummation of the conveyance here involved. However, the evidence fails to show that it was any part of the witness's duty to ascertain and report to his company the acreage contained in any tract of land he was called on to inspect; his primary duty being to determine the quantity and quality of the timber and the nature of the land. While this witness testified that he made a report to the company of his findings with relation to the land here involved, he further testified that he did not report to his company the number of acres contained in the tract and further that he did not know the number of acres contained therein. He further testified that Mr. E. J. Downey was his immediate superior and when asked "Did you ever tell Mr. Downey how many acres were in the tract", he answered—"I never did figure the exact number of acres in the tract so I couldn't have told him." The evidence further shows that Mr. E. J. Downey was the representative of the appellee company in purchasing lands in Montgomery County, and that Mr. C. T. Smith, who represented the company in such area, conducted the negotiations with appellants, under the directions of Mr. Downey, and was responsible for such negotiations and the consummation of the purchase of such land. Mr. C. T. Smith is dead. There was no evidence indicating that Mr. Smith knew or thought that the tract of land contained a less acreage than 639 acres. Mr. Downey testifying as a witness stated, in effect, that he had no recollection of the witness Strauss reporting to him that the tract of land in question was short in acreage or that it did not in fact contain 639 acres; that when making the purchase of said tract of land and in making payment of the purchase price therefor that he relied on there being 639 acres of land in the first tract described in the deed. However, he testified that while he had no recollection of Mr. Strauss reporting to him that said tract of land contained less than 639 acres it was possible that he could have done so. This being the status of the evidence with respect to this matter, it was for the trial court to determine as a matter of fact whether or not Mr. E. J. Downey, and therefore the appellee company, had actual knowledge that the tract of land contained substantially fewer acres than 639. The trial court could have very well concluded that had the witness Strauss reported such a substantial shortage, as he stated he believed existed, that the witness Downey would have remembered such an important fact. The report made by the witness Strauss to his company not being in evidence and the details of such a report not being shown by any kind of evidence, the trial court could have concluded that such a report only covered the quantity and quality of the timber on said survey and the quality of the land, and therefore was justified in finding that the appellee, acting through its duly authorized agent and representative, in good faith, believed that appellants actually owned and were conveying to appellee 619.7 acres of land at the time the purchase price was paid therefor.

Appellants further contend that the knowledge of the witness Strauss as to the shortage of acreage in said tract of land was, as a matter of law, imputed to the appellee company and cite many authorities to support the proposition that notice to the agent is notice to his principal, and that since it was shown that said Strauss had actual knowledge of said shortage that the law imputes such knowledge to the principal, and, therefore, there could be no mutual mistake as between the parties. This would be true if such notice or knowledge came to the agent within the scope of his authority. Before notice or knowledge of an agent is imputed to his principal, the rule seems to be that it must first be shown that the authority of such agent extended to the very matter about which and concerning which such knowledge or notice was obtained. The evidence fails to show that the witness Strauss was authorized to go upon the land being purchased by appellee for the purpose of determining the acreage or that he had any connection with the purchase of said land except that it was his duty to inspect the quality of the land and the growth of the timber thereon. It not being within the scope of his authority to ascertain the acreage in the tract of land involved any notice or knowledge that he might have had pertaining thereto is not as a matter of law imputed to

his principal, 2 Texas Jur., page 563, Sec. 158; Boynton v. Guaranty State Bank of Longview, Tex.Civ.App., 236 S.W. 511; Radford Grocery Co. v. Citizens' National Bank of Odessa, Tex.Civ.App., 37 S.W.2d 1080; Missouri, Kansas & Texas Ry. Co. v. Belcher, 88 Tex. 549, 32 S.W. 518.

 Appellants' contention that appellee was guilty of negligence as a matter of law in not having the land involved herein surveyed prior to the consummation of the transaction, and having failed to ascertain the number of acres actually contained in said tract prior to the payment of the purchase price are also overruled. Appellants' contentions are based on the fact that the attorneys representing the appellee, in their title opinion prior to the execution and delivery of the deed to appellee, suggested that a survey of the land be made before the consummation of the transaction and that the witness Downey, then in charge of purchasing land for appellee, knew that the attorneys for his company had set out in their opinion a requirement to the effect that the land should be surveyed prior to purchasing, and the fact that appellant Oualline furnished C. T. Smith with the abstract and the plat which was prepared by a surveyor by the name of Jack Brown, upon which plat he had computed the number of acres contained in such survey as being 639 acres, and that it was also undisputed that an engineer or a surveyor could take the field notes as contained in the option and in a very short time compute the acreage and thereby discover the shortage; and since appellee failed to take such precautionary measures before the consummation of the deal that it was guilty of such negligence as will in equity bar a recovery. They rely on the general principle that when the means of inquiry are equally open to both parties, if a mistake occurred without any fraud or falsehood, no relief can be granted on account of a mistake alone. Equity will not favor and aid a party thus situated in his act of negligence or carelessness. The evidence shows that the sellers furnished appellee with the contracts and a deed in which the land is described as containing approximately 639 acres and 34.7 acres. The sellers accepted $3,408.35 which is $5.50 per acre for 619.7 acres which the trial court found that appellee believed in good faith that it was acquiring. Appellants furnished a plat showing the acreage as being 639.7 in the first tract. Appellee made no survey of the land prior to the purchase and did not have an engineer or a surveyor to figure the acreage in the field notes as given in the deed, or to re-calculate the acreage from the plat furnished appellee by the sellers. The contentions made by appellants seem to have been overruled in Mason v. Peterson, Tex.Com.App., 250 S.W. 142, 145, wherein it is said: "The seller is ordinarily presumed to know the quantity, character, and quality of the land which he owns and offers for sale". "Defendant, it is true, could have had a topographical survey before he bought the land; and in that sense he had an equal opportunity with his vendor to ascertain the irrigable quantity. But he was not bound to do so; and, if he chose to rely upon representations of his vendor, the fact that such representations were made excused him from informing himself from other sources". See also, Brewer v. Ross, Tex.Civ.App., 290 S.W. 781, where a very similar contention was made and overruled. Also, Stuart v. Denman, Tex.Civ. App., 172 S.W.2d 164; Id., 142 Tex. 129, 176 S.W.2d 730. The foregoing being the complaints lodged against the actions of the trial court by appellants and finding nothing therein requiring a reversal, the judgment of the trial court is affirmed.