## ASA HOXEY V. TACITUS CLAY.

It seems that a call for an intermediate corner, to be S. 45° W., 160 varas from a certain corner of another tract, will control the calls of the survey for course and distance; although such corner is not established on the ground, and can only be found by running the lines of said other tract.

Where A owned half of a league of land, which half had been previously surveyed, and A and B purchased the other half, and with a view to the partition of the second half, went upon the ground with a surveyor and run out and marked the division line between the half leagues, which was a broken line, and a question arose, in making such survey, as to the location of one of the intermediate corners, which called for a certain course and distance from the corner of another tract of land, which latter corner was not marked on the ground; but A in good faith pointed out to B the place where he was informed it was, which afterwards proved to be very near it; and after a casual search for said corner without finding it, they marked the corner of the division line without reference to it, and continued the survey; and divided the half of the league with reference to such division line so run and marked; and it appeared that by the line so run about fifty acres more than half the league fell to A, and that by a line run with reference to the call for the corner of the neighboring survey, the league would have been about equally divided; it was held that B was concluded by his assent to the division line and the partition with reference thereto; there being no concealment on the part of A, nor any surprise or imposition practised on B by him.

Appeal from Washington. Tried below before the Hon. R. E. B. Baylor.

Suit by Tacitus Clay and Felix W. Robertson against Asa Hoxey for "an equal undivided two-thirds" of certain land described in the petition, and for partition. The facts were as follows: In 1835 defendant Hoxey purchased from the executor of Luke Lessassier a tract of land purporting to contain one-half of a league, the boundaries of which half league were set forth in the deed to said Hoxey, which was duly registered on the 26th of February, 1838, as follows: Beginning on John P. Cole's west boundary line at the corner of the league; thence S. 74° W. with the north boundary of Luke Lessassier's league, at 1861 varas set a post from which a Post Oak 24 in. in dia. bears S. 73½° E. 13 varas, and a Post Oak 18 in. in dia. bears S. 4½° E.;

thence S. 31° E. at 4320 varas set a post in the edge of the prairie, from which a Post Oak 12 in. in dia. bears N. 46° W. 36 varas; thence S. 45° W. at 600 varas set a post at 15 varas from N. Clay's N. E. boudary line; thence S. 45° E., 2370 varas set a post 160 varas S. 45° W. from J. P. Cole's S. W. corner, and 15 varas from N. Clay's N. E. boundary line; thence S. 69° E., at 4260 varas intersected the E. boundary line of the league where set a stone; thence N. with the E. boundary line at 2488 varas the corner of the league; thence S. 74° W. at 2099 varas the corner of J. P. Cole's E. boundary line; thence S. 16° E. at 171 varas J. P. Cole's S. E. corner; thence S. 87° W. at 1871 varas J. P. Cole's W. corner; thence N. 16° W. with J. P. Cole's W. boundary line at 6448 varas the place of beginning.

On the first Tuesday in February, 1854, Hoxey, Clay and Robertson, purchased at Sheriff's sale as the property of John Timberlake, the west half of the said league, described in the levy and Sheriff's deed, as bounded on the E. and N. by the half league owned by Asa Hoxey, and on the W. and S. by the headright league of Nestor Clay, including all the headright league of Luke Lessassier except the half league owned by Asa Hoxey. The field-notes of neither the west half nor of the whole league were stated in the record, a diagram being used, upon which the courses and distances were marked on the division line only.

In the summer of 1854, Hoxey, Clay and Robertson went upon the ground with a surveyor, (the witness,) and ran the division line between the east and west halves of the league, for the purpose of making partition (between them) of the western half. They commenced at the beginning corner of Hoxey's field-notes as above described; found the first line marked and the corners marked, but found it 100 varas short of the distance called for; found the second line marked and the third corner (counting the beginning corner) marked, at the edge of the timber, but found said second line 300 varas too long, but, as witness said, he respected and was governed by the marked lines and corners. It did not appear by what authority said division line had been previously run and marked. The third line was in the prairie, and they ran the course and distance, which carried them to a point *ten* varas from the line of the Clay league as called for in the field-notes. (The language of the statement of facts.) The fourth line was entirely in the prairie, and they ran it by the course and distance called for in Hoxey's field-

notes. When they came to the end of this line, for the fifth corner, (the dispute was about the proper location of this corner,) some conversation arose about Cole's S. W. corner, this corner being described in the field-notes as a post 160 varas S. 45° W. from J. P. Cole's S. W. corner, and 15 varas from N. Clay's N. E. boundary line. Clay, Robertson and witness (the surveyor) commenced searching for Cole's S. W. corner in a hollow near by. Hoxey informed them that Cole's corner was upon the hill, and they all went to search for it at a place indicated by Hoxey. They found no corner. The place pointed out by Hoxey was very near the point in the diagram designated as Cole's S. W. corner. The question arose whether the fourth line, which they had just run, ought not to stop short of the point to which course and distance had carried them. After some objection on the part of Robertson to the establishment of the corner at the point reached by course and distance, the parties proceeded to complete the survey, and ran the fifth line, which was the last of the division line. This line they found about 300 varas short of the distance called for. They found no corner at the end of this line, but made one. No objection was made after they commenced running this last line, and Clay at no time objected to the corner made at the commencement of the last line, nor to the running of the last line. (The one now objected to.) After having made this survey, witness proceeded at the request of the parties, to divide the west half of the league into six parts, three in the timber and three in the prairie ; and some days afterwards, in August, the parties exchanged deeds for their respective portions of the west half. Witness, the surveyor, witnessed the deeds, and heard no objection whatever to the partition as made, but the execution of the deeds was spoken of, and from what he heard said by the parties, he considered it as a final settlement of the matter. Cole's S. W. corner was in the prairie ; no timber anywhere near it ; no stone or other landmark to designate it ; and was unknown to the surveyor when he made the above survey ; it could only be ascertained by running the two lines converging to it ; which lines, as claimed by Cole and recognized by the defendant and other adjoining proprietors, would intersect at the corner as designated in the diagram : but not by the field-notes of Cole's survey.

This suit was brought in Sept. 1854, by Clay and Robertson for the two-thirds of the land lying east of the last line as run when all the parties were present, and west of what they claimed

to be the true position of said line, alleging mistake in the establishment of the fifth corner and in running the last line. A survey was ordered, and the same surveyor who had made the survey in the summer of 1854 for the parties, made a resurvey. He ran two of Cole's lines to ascertain his S. W. corner. He ran the lines of the Lessassier league, and discovered that it contained only 3954 acres ; that the east half as previously surveyed by him was 180 acres short of one-half league, and the west half 210 acres short. [There must be some mistake in these figures, as this would make the whole tract contain 4038.—REPS.] Being under the impression that he was required by the order of survey to divide the league into two equal portions, he ran a line at such distance east of the last line as to throw about fifty acres more into the west half. This threw the fifth corner back on the fourth line to a point which the surveyor testified was S. 45° W. from Cole's S. W. corner, and about 160 varas distant from it. The last line, as thus run, was about two hundred varas short of the distance called for in the field-notes, and about 100 varas longer than the corresponding line of the survey of the summer of 1854. During the pendency of this suit, Hoxey purchased all of Robertson's interest.

At the request of plaintiff Clay, the Court instructed the jury to the effect that the controversy depended on the establishment of the fourth corner, and that its proper place was to be determined by the call for Cole's S. W. corner, to be established, if necessary, by running Cole's lines ; and that if the jury believed there was a mistake made as to the rights of the parties, running the division line and making the partition of the western half, none of the parties were estopped from a correction of the error.

The Court refused to instruct the jury on behalf of the defendant, to the effect that the only true guide in such a case is course and distance, and that course and distance could not be governed by a call for a corner of another survey, which corner was not then established, and could only be ascertained by running out the lines of such latter survey.

The Court being requested by the defendant, to instruct the jury that if Clay assented to the line as run by the surveyor in the summer of 1854, and agreed to and established that as the true division line, he could not recover ; which the Court gave with the qualification that if such assent was with a full knowledge on the part of Clay, of all the facts in the case, then he

would be bound thereby, otherwise not. Verdict and judgment for plaintiff for one-third of the fifty acres. Motion for new trial overruled.

*J. & A. H. Willie*, for appellant, argued that there was no evidence of any mistake of fact in the establishment of the division line in the summer of 1852, and cited Bragg v. Lockhart, 11 Tex. R. 160, in support of the instructions asked by defendant as to the true mode of making a survey in such a case.

*Lewis & Barber*, for appellee, argued that appellant was bound by the call for course and distance from Cole's S. W. corner.

WHEELER, J. We think the call for "Cole's southwest corner" a good call, inasmuch as it was capable of being certainly ascertained by tracing lines of his survey, which were known and recognized and established by landmarks, to their intersection at that corner. But in our view of the case, this will not affect its division.

We think the partition made by the mutual consent and agreement of the parties, under the circumstances, must be deemed binding upon them, and so to conclude the plaintiff's right of action. The division line was run for the purpose of making partition by the mutual consent of all the parties in interest. It was run at their instance; they were present superintending the work, and it is to be deemed their joint act. They all appear to have had equal means of information; but to have been at the same time equally uninformed as to the exact position of the southwest corner of Cole's survey. In point of fact it had never been established and marked by any natural or artificial object upon the ground; and was consequently not known. After running the line D,—3, [the fourth line of Hoxey's field-notes.—REPS.] by course and distance according to the calls, in the absence of landmarks, the parties made search for the indicated corner, but did not find it. Previous calls for distance had not corresponded with the actual survey upon the ground, where it could be traced, in the timber, and they must have been aware that this might not. If, then, they intended the call for Cole's corner to control as to the length of the line D,—3, not finding it, they should have proceeded no further until they had taken measures to learn certainly its true position. That was the time to have set about finding the lost

Hoxey v. Clay.

corner; which might have been done by taking the requisite pains. But instead of this, knowing they might not have the requisite distance from that corner, they proceeded to complete the survey, and executed deeds of partition accordingly. Under such circumstances, it is believed, it will not be found that equity has afforded relief to a party on the ground of mistake. Where the means of information are equally open to both parties; and where each is presumed to exercise his own skill, diligence and judgment, in regard to all extrinsic circumstances, equity will not relieve. In like manner, where the fact is equally unknown to both parties; or where the fact is doubtful from its own nature; if the parties have acted with entire good faith, as it cannot be doubted they did in this instance, a Court of Equity will not interpose to afford relief on the ground of a mistake of fact. (1 Story, Eq. Sec. 149, 150.) The means of information were alike accessible to all the parties. The necessity of resorting to those means, if they intended their rights in the partition to be governed by the position of the Cole's corner, was apparent when they failed to find it. That was the time to have ascertained or established its true position. Having disregarded it then, and gone on to make partition upon other and different data, it was afterwards too late to complain of the mistake. "Where each party is equally innocent, and there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference. It is strictly *Damnum absque injuria.*" (Id. Sec. 151.) Such manifestly is this case. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.