JEANETT B. FOSTER ET AL. v. J. W. CHAMPLIN & Co.

The statute requires that a party taking an appeal shall, within twenty days after the term of the court at which the judgment or decree was rendered, enter into bond, with two or more sureties. (Paschal's Dig., Art. 1491, Note 583.)

The term "bond" is of frequent occurrence in the statutes of the Republic of Texas, passed prior to the adoption of the common law, and its signification as used therein was defined by the Supreme Court in the case of Cayce v. Curtis, Dallam's Dig., 403. They there held, that it was to be referred to the civil law for its meaning, force, and legal construction; that there was no such word as bond known to the civil law, but that its equivalent under that law was the word "obligation," and that a seal, not being known to the civil law, and not being required to give force and validity to an obligation, it was not essential to the validity of a bond.

The word "bond," as used in our law, of force previous to the 20th January, 1840, the date of the introduction of the common law, (Paschal's Dig., Art. 978, Note 418,) had a defined meaning.

Where the general or established law affords an equivalent term to the one used in the statute, which is well known and defined in its signification and operation, it cannot be doubted that the legislature intended to give to the new word only that force and signification which the old one possessed.

When the common law was introduced, the word "bond" was not a term wholly unknown to the laws of this country; it was not imported with the common law, and we are not to look to that system for its definition; but we are to give it the same meaning, in statutes subsequently enacted, that it had when used in those which existed prior to the adoption of the common law; and in these latter, as we have seen, it did not signify an instrument under seal.

The introduction of this new system of jurisprudence (the common law) could not operate as an amendment of the statutes then in force, so as to require the senseless addition of a seal or scroll to make that contract good which was already valid by the law of the land.

But it is said that the legislature intended to require more solemnity in the execution of obligations executed upon an appeal than in those entered into when a case is taken to the Supreme Court by writ of error, because the word "bond" is used in the former case, and the word "obligation" in the latter. (Paschal's Dig., Art. 1495, Note 587.) Our inference, drawn from this difference in the language, is just to the contrary. There can certainly be no reason for requiring greater formality in the one case than in the other. The object of the obligees in each instrument is to secure the opposite party in his costs and damages, and insure the performance of the judgment of the Supreme Court. The effect of each instrument is the same, and their conditions are almost identical. Each has the same binding force upon its obligors, and there is no difference in the remedies to be pursued against them in case of a breach of the conditions. The conclusion is, that the law-givers intended these terms as synonymous, thus giving a legislative definition to them in accordance with the decision of the Supreme Court of the Republic above cited.

But admitting that, at the date of the foregoing act, in which appeals to the Supreme Court are regulated, the word bond had a technical meaning, derived from the common law, and that such contracts were required to be under seal, that requirement has been wholly abolished by the act of February 2, 1858. This act reads as follows: "No scroll or private seal shall be necessary to the validity of any contract, bond, or conveyance, whether respecting real or personal property, except such as are made by corporations; nor shall the addition or omission of a scroll or seal in any way affect the force and effect of the same; and every contract in writing hereafter made shall be held to impart a consideration as fully, and in the same manner, as sealed instruments have heretofore done." (Paschal's Dig., Art. 5087, Note 1114.)

This statute was evidently intended to embrace every instrument in the execution of which seals or scrolls had been before that time used. It is somewhat inartificially drawn, but its object was clearly to abolish and forever dispense with these "relics of ancient barbarism." Every bond must be made with respect to either real or personal property, and it is no strained construction to hold that such a one as is now under consideration can be embraced within the language of the above statute.

The law of 1858, (Paschal's Dig., Arts. 4785, 4786,) allowing cross remedies in favor of indorsers and sureties, did not repeal the previous laws, allowing the principals to be dispensed with as parties. (Paschal's Dig., Arts. 225, 1426, Notes 287, 535.) It was not intended to interfere with the former remedies of the holder of a note against the parties bound upon it, nor with the rules of practice before established in such suits, but merely to adjust the order in which debts should be paid as between principal and surety, without causing any additional delay to the plaintiff, who was entitled to the money when collected. (Paschal's Dig., Arts. 225, 1426, Notes 287, 535.)

APPEAL from Calhoun.   The case was tried before Hon. FIELDING JONES, one of the district judges.

The principal question decided in the case arose upon the motion to dismiss the appeal, because the appeal bond was not under seal.

The difficulty on the question of principal and surety grew out of the fact that, the principal having died before suit was brought, his representative was not made a party—indeed could not well have been; ·for it was averred that the claim had been presented to his administrator, and allowed and approved by the county court; therefore the demand stood as a judgment against the principal's estate, of which there was no satisfaction.   And now the surety and indorser were sued, but they did not bring in the representative of the principal.

This action was brought against the appellants, J. B. Foster and S. J. Lee, on two promissory notes, made by W. J. Foster and J. B. Foster, payable to S. J. Lee, and by Lee indorsed to the appellees.   Before the institution of the suit, W. J. Foster died, and the suit was instituted against J. B. Foster, maker, and S. J. Lee, indorser.   J. B. Foster plead that she was the surety of W. J. Foster, which was found by the jury to be true.   She claimed, in her plea, that the estate of the principal was solvent, and that the judgment in the cause should be so framed that the estate of the principal should be first exhausted before execution should issue against her.

*Holts & Finley*, for appellant.—By the statute passed July 1, 1858, (O. & W. Dig., Arts. 1599, 1600,) it is provided, that, when one of the defendants to a suit on a bill or note is found by the jury to be a surety, the court shall make an order directing the sheriff to levy the execution first upon the property of the principal subject to the execution, and situate in the county in which the judgment is rendered, before a levy shall be made upon the property

of the surety, &c.   The case before the court is not one in which judgment was rendered against the principal and surety, yet we believe it is one coming within the remedies sought to be given by the statute.   It is evidently the purpose of the statute to protect the property of the surety from sale until the property of the principal in reach of the creditor shall be exhausted.   Will the fact that the principal creditor dies change the protection given to the surety, and suffer the creditor to pass by the estate of the principal, and proceed to levy his debt against the surety, in the first instance?   We think not.   In the case before the court, it is not questioned but the estate of the principal is solvent.   We hold that the equity of the statute will require the creditor to go into the probate court for the collection of his debt, where the estate of his principal debtor is solvent.   We ask that the judgment may be so changed that execution shall be stayed against the surety until the estate of the principal debtor shall be exhausted.

*D. V. Cleveland,* for appellees.   The only question made by the appellants in this cause is, whether a judgment can be rendered against a surety, and execution be issued thereon, without first exhausting the estate of the principal; or, rather, whether the district court should stay execution on a judgment against a surety until the estate of the principal has been exhausted.   And when the suit was brought against the surety alone, without joining the principal, he being dead, the appellant urges that the district court should in this case have made an order staying execution against the defendant, J. B. Foster, until the estate of W. J. Foster was exhausted, and cites the provisions of the act of 1858 relative to principal and surety.   There is no doubt that it is the settled law in this State, that suit may be brought against the surety without joining the principal, or his legal representative,

he being dead.  (O. & W. Dig., Arts. 1595, 1596; 5 Tex., 130; 22 Tex., 189; 23 Tex., 486.)

The statute of 1858 (O. & W. Dig., Arts. 1599, 1600) applies only, as I conceive, when the principal and surety are both alive, and are jointly sued; and not a case like the present, where the principal died before the suit was brought.    That statute declares, in substance, that when suit is brought against parties to a bill or note, a party jointly sued may be allowed to prove the fact that he was a surety only; when the court shall make an order, directing the sheriff to levy first upon the property of the principal in the county, &c.; thereby showing conclusively that the legislature intended this statute to operate only on persons subject to suit in the courts, and on whose property execution could be levied.  (O. & W. Dig., Arts. 1599, 1600.)  But the district court had no jurisdiction of the estate of the principal debtor in this case, nor could its executions be levied on the property of said estate. (O. & W. Dig., Art. 758.)

After a claim against an estate has been allowed and approved by the probate court, the district court has no jurisdiction of the claim, nor can suit be brought thereon against the estate.

WILLIE, J.—A preliminary question arises in this case upon the motion of appellees to dismiss the appeal because the bond is not under seal.    The statute requires "that any party taking an appeal shall, within twenty days after the term of the court at which the judgment or decree was rendered, enter into bond, with two or more sureties," &c. (O. & W. Dig., Art. 549.)  It does not in express terms require that the bond should be under seal; but it is urged that the word "bond," as used therein, has a technical meaning, derived from the common law, which was the rule of decision in our courts at the time of the passage of this statute, and that a seal is essential to the validity of

such instruments under that system of laws. So far as the present case is concerned, the objection might be overruled, on the ground that it comes too late, not having been made at the return term of the appeal. (Horton .v. Bodine, 19 Tex., 580.)

But in order to prevent the question of the validity of an appeal bond not under seal from again arising in this court, it will be determined in this case without reference to the objection that the motion was not filed in time. The term " bond" is of frequent occurrence in the statutes of the Republic of Texas, passed prior to the adoption of the common law, and its signification, as used therein, was defined by the Supreme Court in the case of Cayce v. Curtis, Dal. Dig., 403. They there held, that it was to be referred to the civil law for its meaning, force, and legal construction; that there was no such word as bond known to the civil law, but that its equivalent under that law was the word "obligation;" and that, a seal not being known to the civil law, and not being required to give force and validity to an obligation, it was not essential to the validity of a bond.

The word "bond," then, as used in our law, of force previous to the 20th of January, 1840, the date of the introduction of the common law, [Paschal's Dig., Art. 978, Note 418,] had a defined meaning and construction, which excluded the idea that a seal was at all essential to the validity of such an instrument. The court go on to say, in the case above cited, that "were a term of art or science wholly unknown to the law of the country, and which in itself imparted a definite meaning, to be employed in a statute, then, indeed, the court would be compelled, *ex necessitate rei,* to look to the particular art or science from which it was taken for its definition; but when the general or established law affords an equivalent term to the one used in the statute, which is well known and defined in its signification and operation, it cannot be doubted that the legislature intended to give to the new word only that force and signification which the old one possessed."

When the common law was introduced, the word "bond" was not a term wholly unknown to the laws of this country; it was not imported with the common law; and we are not to look to that system for its definition. But we are to give it the same meaning in statutes subsequently enacted that it had when used in those which existed prior to the adoption of the common law, and in these latter, as we have seen, it did not signify an instrument under seal.

It would be absurd to hold that bonds executed subsequently to the 20th of January, 1840, under statutes which existed previous to that time, would be void for want of a seal, when, if the same character of bonds had been executed previous to said day, they would have been valid without it. The introduction of this new system of jurisprudence (the common law) could not operate as an amendment of the statutes then in force, so as to require the senseless addition of a seal or scroll to make that contract good which was already valid by the law of the land.

If the adoption of the common law did not change the definition and requisites of a bond made in accordance with previous statutes, it would be unreasonable to hold that it had this effect as to those executed under statutes subsequently passed. It would make the signification of an important legal term to depend upon the date of the statute in which it was found, and would have a tendency to create confusion in the interpretation of our laws.

But it is said that the legislature intended to require more solemnity in the execution of obligations executed upon an appeal than in those entered into when a case is taken to the Supreme Court by writ of error, because the word "bond" is used in the former case, and the word "obligation" in the latter. [Paschal's Dig., Art. 1495, Note 587.] Our inference, drawn from this difference in the language, is just to the contrary. There can certainly be no reason for requiring greater formality in the one case than in the other. The object of the obligors in each

instrument is to secure the opposite party in his costs and damages and insure the performance of the judgment of the Supreme Court. The effect of each instrument is the same, and their conditions are almost identical. Each has the same binding force upon its obligors, and there is no difference in the remedies to be presumed against them in case of a breach of the conditions. The conclusion is, that the law-givers intended these terms as synonymous, thus giving a legislative definition to them in accordance with the decisions of the Supreme Court of the Republic above cited.

But admitting that, at the date of the foregoing act, in which appeals to the Supreme Court are regulated, the word bond had a technical meaning derived from the common law, and that such contracts were required to be under seal, that requirement has been wholly abolished by the act of February 2, 1858. This act reads as follows: "No scroll or private seal shall be necessary to the validity of any contract, bond, or conveyance, whether respecting real or personal property, except such as are made by corporations; nor shall the addition or omission of a scroll or seal in any way affect the force and effect of the same; and every contract in writing hereafter made shall be held to impart a consideration as fully, and in the same manner, as sealed instruments have heretofore done." [Paschal's Dig., Art. 5087, Note 1114.] This statute was evidently intended to embrace every instrument in the execution of which seals or scrolls had been before that time used. It is somewhat inartificially drawn, but its object was clearly to abolish and forever dispense with these " relics of ancient barbarism." Every bond must be made with respect to either real or personal property; and it is no strained construction to hold that such a one as is now under consideration can be embraced within the language of the above statute.

We are therefore of opinion that the motion to dismiss should be overruled.

The only objection urged by appellants to the judgment of the court below is, that it did not decree that the estate of the deceased principal should be exhausted before execution should run against appellants, one of whom was surety and the other indorser upon the note which is the foundation of the present action. Had the principal been alive, and suit been brought against him jointly with the appellants, and the latter had so required it in their answer, supported by corresponding proof, the proper judgment, under the act of February 5, 1858, would have been, that the execution be levied first on the property of the principal, situated in the county where the judgment was rendered, before a levy should be made of the property of the appellants. [Paschal's Dig., Art. 4783, Note 1070.] But the principal in this case was dead at the time of the commencement of this suit, and the plaintiff was not, under our law, bound to join his representatives as parties defendant, or to go into the probate court to enforce it against his administrator. Suit was, under the circumstances properly commenced against the surety and indorser alone, and against them only could judgment be rendered. The law of 1858 [Paschal's Dig., Arts. 4785, 4786] did not operate as a constructive repeal of the former law allowing this course to be pursued. It was not intended to interfere with the former remedies of the holder of a note against the parties bound upon it, nor with the rules of practice before established in such suits, but merely to adjust the order in which debts should be paid as between principal and surety, without causing any additional delay to the plaintiff, who was entitled to the money when collected. [Paschal's Dig., Arts. 225, 1426, Notes 287, 535.]

The judgment of the court below is

AFFIRMED.

[NOTE.—These sections did not in terms dispense with the necessity of joining the representatives of solvent principals.—REPORTER.]