**J. D. LYONS et al., Appellants,**

v.

**W. C. KEITH, Appellee.**

**No. 6117.**

Court of Civil Appeals of Texas.

Beaumont.

July 10, 1958.

Rehearing Denied Sept. 18, 1958.

Jack M. Moore, Beaumont, for appellant.

Alto Watson, D. F. Sanders, Beaumont, for appellee.

HIGHTOWER, Justice.

This was an action by W. C. Keith to recover the value of excess acreage conveyed to defendants, J. D. Lyons and George Norman. From an adverse judgment the defendants have appealed.

The tract of land was originally a portion of the Caswell Trust, from which it devolved to the Estate of appellee's mother, Seawillow Caswell Keith. The Caswell Trust was dissolved and distributed in September of 1950. Appellee had been one of its trustees since about 1947 to the date of its dissolution. Seawillow Caswell Keith died prior to any of the events occasioning this lawsuit. Appellee and John C. White were named as Independent Executors and Trustees in her will, by which appellee received one-half undivided interest in her estate. By written contract of January 5, 1951, appellee Keith and John C. White, as such Independent Executors and Trustees of the Estate of Seawillow Caswell Keith, agreed to sell, and appellants agreed to purchase, the tract of land in controversy, describing the same therein as follows:

Lying and situated in the County of Jefferson, State of Texas, 164.325 acres out of the W. B. Dyches Survey, described as follows: (Here follows a description of the property by field notes, minerals reserved to the seller).

The purchase price was therein stated to be $9,859.50. No reference was had of the price to be paid per acre. By deed of January 17, 1951, appellee and John C. White, in the same capacities, conveyed the property by the same description as set out in the contract to the appellants for the recited consideration of $10 and other considerations. The full purchase price stated in the contract was thereafter paid. It developed in the trial of the case that, on January 1, 1951, oral partition had been made of the Seawillow Caswell Keith Estate, which was confirmed by written partition the April following, such instrument particularly acknowledging the effective date of the partition to be as of January 1, 1951, the date of the oral partition. By such partition agreements, appellee became vested with the fee simple title to all the tract in controversy. By deed of April 9, 1953, appellants sold the tract of land to Federal Land Corporation for $85,000. This deed contained no designation of acreage, but described the tract only by metes and bounds. About this time appellee Keith learned that the tract contained an acreage greatly in excess of 164.325. He subsequently, August 24, 1954, in his individual capacity as a devisee and legatee of the Seawillow Caswell Keith Estate, instituted suit against the appellants to recover the value of the excess acreage, and alleged as grounds therefor a mutual mistake of fact of the parties concerning the true acreage of the tract. He alleged the purchase price agreed upon between the parties to be $60 per acre and sought recovery of the excess on such basis. The case was tried to the court without a jury and judgment in favor of appellee against the appellants, jointly and severally, was rendered and entered in the sum of $8,355.-

90, [139.265 excess acres at $60 per acre] together with interest on such sum at the rate of 6 percent per annum from the 17th day of January, 1951, to the 17th day of October, 1956, the date of judgment, in the sum of $2,882.77, for a total of $11,238.67, plus interest thereon at 6 percent until paid.

The trial court's findings of fact and corresponding conclusions of law are in the record before us, and it is believed they sufficiently indicate the nature of the defense which they oppose. The court found the true acreage of the tract to be 303.950 instead of 164.325 for an excess acreage of 139.265, and such finding is not here in dispute. The substance of the findings of fact which are in dispute and with which we are first concerned are: (1) the sale was on a per acre basis; (2) the recital in the deed was a mutual mistake of the parties, all of whom believed the tract to contain only 164.325 acres of land.

█ The appellee makes no issue of the matter, being content to argue the sufficiency of the evidence relating to the foregoing findings of fact, but it is notable that appellants, by their points of error, do not present the fact question of the sufficiency of the evidence to support such findings. Their points 5 and 14 alone attack these findings of fact. Such points are somewhat lengthy, argumentative and multifarious but their substance is only to contend that there is no evidence to support the findings of fact of a per acre sale and mutual mistake. Our competence is thus limited to determination of the question of law of whether there is any probative evidence to support the findings. Gulf C. & S. F. Ry. Co. v. Deen, Tex., 312 S.W.2d 933, and cases cited. In the light of this rule we observe that the record is replete with appellee's testimony to the effect that he was completely ignorant, during all his years of familiarity with the tract, of any appreciable amount of excess acreage contained therein beyond that of 164.325. The appellants do not argue to the contrary. Accepting such ignorance or mistake of ap-

pellee's as a fact, they contend that the same was only a unilateral mistake of fact by appellee with which they were in no way connected or bound. However, the record refutes such theory of appellants. Appellant Lyons handled the entire transaction to its culmination on behalf of himself and appellant Norman as a partnership. The appellee testified that Lyons usually referred to the tract as containing "164.65 acres," or that "164 acre tract." Appellee further testified that he and appellant Lyons bargained for the tract of land in the belief that it contained about 164 acres at a time when Lyons came to discuss buying the property at appellee's home; that they there reached the agreement of $60 per acre; that the bargaining began first with Lyon's offer of $30 per acre and culminated in the agreement of $60 per acre. This testimony of appellee was corroborated by his wife, who testified that she was there at the time, in the presence of the parties, and heard the agreement. Appellee testified in regard to appellant Norman's participation in the transaction, as follows: "We consummated that thing at the Jefferson County Abstract Company, and as I recall it, Mr. Norman and myself both grabbed a pencil and a piece of paper and started figuring out 164 acres against $60.00. We came up with a different answer so we got Bert Holton to figure it on a calculating machine. I think we checked our figures and agreed to it." "Q. Was that done immediately prior to signing the deed? A. Yes, sir."

Appellant Norman testified, as follows:

"Q. Did you buy it without knowing how many acres were there approximately? A. I knew the approximate amount of the acreage, yes.

"Q. What was your estimate of the acreage? A. Well, I did estimate it at 165 acres, more or less.

"Q. When you bought the land you thought you were buying approximately 165 acres of land? A. More or less.

I was satisfied I was getting 165 acres, more or less."

Appellant Lyons testified on direct:

"Q. What extent of examination of the land had you made? A. I had been over all of it.

"Q. Could you tell about the acreage in the tract? A. I was satisfied with what I was buying.

"Q. You were satisfied there was 164.325 acres, more or less? A. Yes, sir."

On cross he testified:

"Q. It was your estimate when you bought this land it contained 164.325 acres, wasn't it? A. Well, I think we were—looked at the map, that is what was on the map, I think what we understood.

"Q. You understand it contained 164.325 acres, Mr. Keith understood that? A. Yes, sir, that is what the map called for, the county, what it called for.

"Q. That is a difficult tract of land to estimate acreage on? * * * A. Yes, it is, that is very true. * * *

"Q. Did you ask Mr. Keith at that time how many acres was in the tract of land? A. He said it was approximately—he did not know exactly, all he was going by was the map, I knew it was that Caswell Trust tract, that tract he got, we discussed it, it was on the record as 165 acres."

■ We conclude that this testimony sufficiently refutes the appellants' contention of no evidence to support the trial court's findings of fact above noted. But the appellants say that the foregoing, and other testimony in the record, establishes as a matter of law, that the sale was not upon a per acre basis, and that the excess acreage was not conveyed as a result of a mutual mistake. With the exception of the above noted testimony of the appellants, they correctly quote the record as reflecting that in the main the appellants' testimony is to the effect that they had no certain knowledge of how many acres the tract contained; that they had never heard any claim of appellee that the sale was on a per acre basis prior to the execution of the conveyance, and that they purchased the land as one complete tract at a stated price without regard to the actual acreage it might contain. They call our attention to this testimony of appellee, elicited on cross-examination: "Q. You actually—what you sold was the same tract of land which you—which the estate of your mother received from the Caswell Trust? A. That is what I thought I was signing." Considering the testimony as a whole, we cannot agree that it refutes, as a matter of law, the trial court's finding of a mutual mistake and a sale by the acre. The latter testimony of appellee's standing alone and unexplained, of course, could only be taken to mean, as argued by appellants, that the appellee intended to convey the whole tract in controversy at the price stated without regard to a deficiency or excess of acreage of that called for in the deed. But such testimony does not stand alone, and it is not unexplained, for as previously stated the record is replete with appellee's testimony to the effect that he had always believed such tract to contain about 164 acres. Considering his statement of, "That is what I thought I was signing," in the light of all his other testimony, it clearly imports that he thought he was conveying the tract in controversy, as he indeed did, but only with the intent and belief that it contained 164.325 acres.

■ Additionally, concerning this theory of law, appellants say that because the written contract calls for a stated price and describes the tract of land by metes and bounds without referring to acreage as an inducing factor for the sale, that the same was a sale in gross under an unambiguous deed, the import of which cannot be varied or contradicted. They

correctly state the principle of law in Weir v. McGee, 25 Tex.Supp. 20, 21 and cases of similar import, to the effect that a sale is not one by the acre just because the deed mentions a certain number of acres; that whether, according to the face of a deed, a sale is one by the acre or in gross, is a question of law and not of fact, and that, in general, where there is a mention of the quantity of acres, and also a certain description of the subject by metes and bounds, the mention of the quantity of acres is but a matter of description and that the parties thereto are bound, or presumed to have contracted with reference to the acreage actually encompassed by the field notes. The deed and contract with which we are concerned, standing alone and unexplained by parol testimony, is also correctly construed by the appellants as showing the sale of this tract of land in gross for the price stated therein. However, they choose to disregard the long established principle of law to the effect that although the contract and deed show a sale in gross, it may be shown by parol evidence, under appropriate pleadings, that the sale was actually by the acre, thus making the matter a question of fact for court or jury, as in the case at bar. O'Connell v. Duke, 29 Tex. 299, 300; Smith v. Fly, 24 Tex. 345; Arrot v. Smith, Tex.Civ.App., 225 S.W.2d 639 and cases cited.

■ We are next concerned with the trial court's finding of fact and corresponding conclusion of law to the effect that appellee was not guilty of such negligence as to preclude his relief in equity in failing to ascertain the true acreage of the tract prior to the conveyance thereof. For the purpose of this opinion, we designate such finding of fact as the court's third. By their 15th point of error, the appellants say: "The trial court erred in finding as a fact that appellee was not guilty of negligence in failing to determine the number of acres in the tract of land sold, because such finding of fact is contrary to the admissions of appellee on the trial of this cause."

This point is appellants only point attacking this third finding of fact. By other points, however, appellants attack the court's conclusions of law of appellee's lack of negligence. Staying well within the record they say that the appellee, who was one of the trustees of the Caswell Trust at the time of its dissolution aforesaid in 1950, was advised by the attorney for such trust, Mr. Peter Wells, who was also acting as appellee's personal attorney at the time, that the title and extent of the lands of such trust, which included, as aforesaid, the tract in controversy, were not known and that no survey would be had of them prior to their distribution among the beneficiaries of such trust; that upon the partitioning and distribution of the Seawillow Caswell Keith Trust, as aforesaid, the appellee as a devisee and legatee under the will of his mother, Seawillow Caswell Keith, and in his capacity as Independent Executor of such will, accepted the land in controversy in the full knowledge that he did not know the titles nor the full extent of the lands distributed thereunder. They also point to the fact that immediately prior to the consummation of the contract of sale the appellee refused to have the land surveyed upon appellant Lyon's request that he do so. They say, correctly, that he refused to make such survey because he did not wish to incur the expense. They discuss the fact that a considerable portion of the tract was bounded by Pine Island Bayou, which, because of its various and intricate meanders, made the acreage of the tract very difficult of estimation. Therefore, considering all of the foregoing evidence, they contend that none of it supports the trial court's finding of no negligence, and they say that all of this evidence establishes appellee's negligence to such extent as to preclude him equitable relief. The appellee, on the other hand, while denying any evidence of negligence, also contends that, where recovery is sought on the grounds of mutual mistake, under these circumstances, the question of negligence is immaterial. He submits the cases of Wheeler v. Holloway, Tex.Com.App., 276

S.W. 653, and cases there cited, and Custer v. Flowers, Tex.Civ.App., 14 S.W. 2d 109, as supporting such contention. We have carefully considered these cases and are unable to construe them as enunciating such principle of law. However, for reasons hereinafter stated, we do not believe that a determination of the correctness of this contention of appellee's is necessary. It does not appear that Mr. Wells advised that the extent of the acreage of the tract in controversy was doubtful or that it might vary materially with its description of 164.325 acres in the Caswell Trust books. He only stated that all the interested parties were advised that the extent of the lands of all the trust (the Trust included lands in Jefferson, Hardin, Liberty and Tyler Counties) were not known nor was the condition of their titles. We are not prepared to say that such information charged appellee with notice of such an appreciable excess in acreage of this particular tract as to impute negligence as a matter of law. Evidence of the chain of title to the tract does not appear in the record beyond its acquisition by the Caswell Trust. It is clear, however, that the tract had been on the Caswell Trust books as containing 164.325 acres for a great many years. Appellee states that he had been familiar with it as an asset of such trust estate ever since he was a kid. The faith he evidenced in the Trust books— a matter probably and properly inferred by the trial judge—, his knowledge that the deed records reflected the tract to contain 164.325 acres; the fact that the county map alluded to in the testimony of appellant Lyons, as above set forth, called for 164.325 acres, considered with his knowledge that the appellants, too, believed the tract to contain about the same amount of acreage, does not impute such negligence by appellee in failing to survey the tract before selling it, to our minds, as to preclude appellee the equitable relief he seeks. The very fact that he accepted this tract as containing 164 acres of land, as a part of his pro rata share in the partitioning of his mother's

estate, emphasizes the settled reputation of the tract to contain 164.325 acres. We think all the foregoing evidence sufficiently supports the trial court's third finding of fact and corresponding conclusion of law predicated thereupon. . .

In support of their contentions that the trial court erred in its findings of mutual mistake and no negligence, the appellants forcefully and ably present such authorities as Smith v. Fly, supra; Coker v. Benjamin, Tex.Civ.App., 83 S.W.2d 373; Dalton v. Rust, 22 Tex. 133, 134; Eaton v. Tod, Tex.Civ.App., 68 S.W. 546; Oualline v. Champion Paper & Fibre Co., Tex.Civ. App., 206 S.W.2d 267; Hoxey v. Clay, 20 Tex. 582, and Simkins on Equity, 2nd Ed., p. 521, and Texas cases there cited.

To attempt to distinguish the facts in these cases, and the many others of similar vein cited by appellants, from the facts of the present case would unduly prolong this opinion. We will only say, with the exception of the Smith case and the Oualline case, that they all appear to be bottomed upon the following rule announced in Pomeroy's Equity Juris., 3rd Ed., Sec. 855: "When parties have entered into a contract or arrangement based upon uncertain or contingent events, purposely as a compromise of doubtful claims arising from them, and where parties have knowingly entered into a speculative contract or transaction,— one in which they intentionally speculated as to the result,—and there is in either case an absence of bad faith, violation of confidence, misrepresentation, concealment, and other inequitable conduct mentioned in a former paragraph, if the facts upon which such agreement or transaction was founded, or the event of the agreement itself, turn out very different from what was expected or anticipated, this error, miscalculation, or disappointment, although relating to matters of fact, and not of law, is not such a mistake, within the meaning of the equitable doctrine, as entitles the disappointed party to any relief either by way of canceling the contract and rescinding the

transaction, or of defense to a suit brought for its enforcement. In such classes of agreements and transactions, the parties are supposed to calculate the chances, and they certainly assume the risks, where there is no element of bad faith, breach of confidence, misrepresentation, culpable concealment, or other like conduct amounting to actual or constructive fraud."

This equitable doctrine, as noted in most of the foregoing authorities of appellants, is unhesitatingly followed in voluntary settlements of boundary disputes where the parties were mutually mistaken in their belief that the line agreed upon was the true boundary. See Walton v. Steffens, Tex.Civ.App., 170 S.W.2d 534, citing Hoxey v. Clay, supra. Needless to say, such authorities are not applicable here. Nor is the rule otherwise applicable. We observe no evidence that compels the conclusion that the parties herein had any knowledge or suspicion that they were entering into a transaction of doubtful or speculative nature. The great weight of the evidence is to the contrary.

Smith v. Fly, supra, is more nearly in point with the question in this case of appellee's negligence, vel non. There, Smith sought to recover damages for an alleged deficiency of 115 acres. The defendant interposed the defense of limitation, which defense was sustained. The Supreme Court affirmed with the following language:

"A deficiency, so great, in a sale by the acre, of a tract of 500 acres, can scarcely be supposed to have been within the risk which the parties meant to incur, or to have been intended to be embraced by the words 'more or less', employed in the deed. There can be little doubt, that the allegations of the petition show a cause of action; and the question is, whether it was barred by the statute of limitations, at the time of bringing the suit. * * * The plaintiff alleges that he did not discover the deficiency in the quantity of land, 'until some time in the month of January last.' But he does not assign any reason why the

discovery was not sooner made. There was nothing in the nature of the fact, to prevent a discovery. A survey, which might have been made at any time, would at once have led to it. And a failure to resort to so obvious a means, in the absence of the suggestion of any other cause for the omission, can be regarded as attributable solely to the plaintiff's own negligence. We think the discovery of a fact, susceptible of being so readily ascertained, ought to have been sooner made."

The distinction is that the appellee here had assigned several reasons why the discovery was not sooner made, and, as we have hereinabove concluded, the trial court's finding of fact and conclusion of no negligence on the part of the appellee is sufficiently supported by the evidence.

The appellants say that Oualline v. Champion Paper & Fibre Company, supra, an opinion delivered by the late Chief Justice Coe of this court, is squarely in point in their favor. We do not agree. There the plaintiff recovered judgment for a deficiency of acreage in a tract he had purchased from defendants. In affirming, Chief Justice Coe stated the appellants' position to be [206 S.W.2d 271]:

"They rely on the general principle that when the means of inquiry are equally open to both parties, if a mistake occurred without any fraud or falsehood, no relief can be granted on account of a mistake alone. Equity will not favor and aid a party thus situated in his act of negligence or carelessness."

Having thus alluded to the nature of appellants' contentions, the judgment of the trial court was then affirmed in the face of facts tending to establish the negligence of plaintiff much more strongly for failing to have a survey made prior to purchase than does the evidence in the present case.

In overruling all of the above-mentioned contentions of the appellants, we feel that we are supported by the following language

of the Supreme Court in O'Connell **v.** Duke, supra:

"In contracts of this character, the same good faith is required, and the same responsibility attaches to its violation, which law and reason prescribe in every description of contract. If, through fraud or gross and palpable mistake, more or less land should be conveyed than was in the contemplation of the seller to part with or the purchaser to receive, the injured party would be entitled to relief in like manner as he would be for an injury produced by a similar cause in a contract of any other species.

" * * * It has long since been settled, that the relative extent of the surplus or deficit cannot furnish, per se, an infallible criterion in each case for its determination, but that each case must be considered with reference not only to that, but its other peculiar circumstances. The conduct of the parties, the value, extent, and locality of the land, the date of the contract, the price, and other nameless circumstances, are always important, and generally decisive. In other words, each case must depend upon its own peculiar circumstances and surroundings.

"It is evident that, in a sale per acre, much less variation from the quantity intended to be conveyed would be indicative of a mistake than where a specific tract is sold by metes and bounds, the quantity of acres being mentioned merely as matter of description. But the impracticability of ascertaining the exact amount in a tract with precision, the different results that are produced by different surveyors on account of roughness of ground, variation of instruments, etc., will render a small surplus or deficit, however exactly the parties may have intended to be confined to a specific quantity, ineffectual as a basis for relief; because parties are presumed to have contracted with reference to such ordinary contingencies, and to have accepted hazard of gain or loss. On the other hand, of where a surplus is evidently contemplated by the terms of the contract, but it turns out that the surplus exceeds considerably or greatly what the proof shows was contemplated by the parties, and such excess, if known, would have materially influenced the contract, which is to be judged of from the proof, this is a mistake against which relief will ordinarily be granted, unless the injured party has been guilty of culpable negligence. In these cases, the inquiry is first to be made whether the parties have made a mistaken estimate of the quantity which materially influenced the price, and then whether, notwithstanding such mistaken estimate, they have waived the right to compensation by an acceptance of the hazard of gain or loss by the estimate. Whenever the excess or deficiency is palpable and unreasonable, and such as is shown not to have been in the contemplation of the parties, relief will be granted, unless the proof shows that the hazard of gain or loss, whatever it might be, was accepted and entered into the contract."

■■ The court further found the facts and law to be that the reasonable market value of the excess was $60 per acre. By appropriate points, the appellants say that there was no evidence or pleadings of market value and that the court therefore erred in rendering judgment on the basis of $60 per acre for the excess acreage. They also contend that it was error to award any interest in the judgment as first above-mentioned in our statement of the case. The appellants are correct to the extent that the pleadings are devoid of allegations of market value, and no evidence of such was adduced on the trial. However, this holding does not alter the correctness of the principal amount of the court's judgment in its final analysis, for, as above noted, appellee sought recovery upon the basis of the price he alleged the appellants agreed to pay for the tract per acre—$60.00. The court also found as a fact that the purchase price agreed upon between the parties for the tract was $60 per acre. However, there was no

conclusion of law to such effect. Nevertheless the principal amount of the judgment is correct under the pleadings, evidence and findings of fact—$8,355.90, being the price agreed upon of $60 per acre for the excess of 139.265 acres, and the appellants' contentions in connection with the principal amount of the judgment are overruled. See 3–B Tex.Jur. (Rev.), pg. 280, Sec. 875; Pg. 505, Sec. 965, et seq. Insofar as the judgment attempts to award interest to appellee from January 17, 1951, the date of the deed, to October 17, 1956, the date of the judgment, it is erroneous, and the appellants' contentions are sustained. It is doubtful that appellee's cause of action constituted a claim for damages to which interest could be added as an element thereof during such interim. If so, however, appellee was not entitled to it eo nomine, during such interval. He must have specifically plead his right to recover for such period, which he failed to do. Settegast v. Timmins, Tex.Civ.App., 6 S.W.2d 425, error ref. Insofar as the court allowed interest on the judgment from its rendition until paid, it was correct, regardless of the pleadings or the nature of the claim, by reason of Art. 5072, R.C.S., Vernon's Ann.Civ.St. art. 5072, providing for interest on all judgments.

By still another point, however, the appellants contend that it was error to render judgment for the excess upon the contract price of $60 per acre. They submit that the correct measure of recovery would be the actual value of the excess. In this connection, they call attention to the undisputed evidence that only 103 acres of the tract is above flood state; that much of the remainder is flooded several times a year and fit only for pasturage, and is, therefore, of much less value. This point is without merit. As hereinbefore observed, all of the parties to this transaction had for several years theretofore been intimately familiar with the tract in controversy. They had each been upon it, observed it and discussed

it. All the evidence supports the conclusion that they agreed among themselves that each acre as a part of the undivided whole of the tract was of the value of $60. In these circumstances we refer to the Supreme Court's holding in Denman v. Stuart, 42 Tex. 129, 176 S.W.2d 730, 732, for the correctness of the trial court's judgment. The Court stated in that case, which was one involving a mutual mistake in the exchange of lands, as follows:

"Surely there can be no fairer, more equitable valuation placed on acreage which the parties to an exchange believe, in good faith, that one of them is getting but which, because of mutual mistake, he does not get, than that which they themselves fix in negotiating and consummating the trade. * * * We are content to adopt the appraisement which the parties made when they entered into the contract, as they thereafter construed and reaffirmed it in making the adjustment on the shortage in the Tarrant County land. It is a matter of contract, as to which they must be held to have bound themselves. Certainly neither Stuart nor Denman can now say that their own yardstick, once already used by them, is not both exact and dependable. We approve the measure of damages applied by the trial court."

We next consider the appellants' contentions that the court erred in overruling their pleas in abatement and special exceptions (these pleas and exceptions were carried along with the case and overruled after the hearing on the merits) to the effect that appellee, having alleged in his petition a contract of sale between W. C. Keith and John H. White, as Independent Executors of the Estate of Seawillow Caswell Keith, to appellants, of the tract of land in controversy, as giving rise to individual action, failed to allege that he had succeeded to such a cause of action if any existed. They also contend that it was error for the court to admit in evidence the written partition agreement of April

30, 1951, between the beneficiaries of Seawillow Caswell Keith Estate, (Such agreement is referred to in our statement of the case) for the reason that it did not show any transfer to appellee of the cause of action effected in this suit and was an attempt to vary the terms of the written contract of sale. We consider these contentions to be without merit. In appellee's first amended original petition it was alleged: "By April 30, 1951 all liability for the Seawillow Caswell Keith Estate had been determined and paid, and by instrument dated April 30, 1951 and executed by the last party thereunto on the 15th day of May, 1951 the partition of said estate was made. Said instrument is recorded in the Deed Records of Jefferson County, Texas in Vol. 818, p. 35, et seq. in the office of the County Clerk of Jefferson County, Texas, and to such instrument so recorded, reference is hereby made and the same is incorporated herein and by reference the same as though copied herein in haec verba. By the terms of said instrument and especially paragraph 2C and paragraph 8, the tract of land above described and here referred to, together with all the proceeds of the sale thereof, were partitioned to your plaintiff, and he is the sole owner of the above set forth chose in action as of January 1, 1951." In this partition agreement thus referred to in appellee's petition, paragraph 2C thereof, apportions the tract of land in controversy to the appellee. Paragraph 8 thereof provides that it is agreed by the parties hereto that all conveyances and transfers and partitions of the hereinabove listed properties shall be effective as of January 1, 1951 and that the proceeds of the sale, rentals, royalties or income from any such property, dividends, or proceeds of sale of any stock or securities shall inure to the benefit of partitionee hereof, to whom said property is set aside by this agreement, and all costs, expenses, or taxes accruing on or after January 1, 1951 on or to such property shall be borne by the partitionee thereof. The trial judge in his findings

of fact concluded that the property involved was part of the Seawillow C. Keith Estate; that by will of Seawillow Caswell Keith duly admitted to probate, appellee was the devisee of a one-half undivided interest in the property involved; that prior to the transaction involved in this suit and at the time when all of the debts of the Seawillow Caswell Keith Estate had been paid, an oral partition of the Seawillow Caswell Keith Estate had been made by all parties interested in such estate, thereby the title of the entire property involved in this suit was vested in appellee; that the oral partition was confirmed by a written partition of all parties interested in the Seawillow Caswell Estate after the transaction herein was made and prior to the filing of the suit, thereby all title to the cause of action and claim involved herein was vested in appellee. The plaintiff's petition expressly alleged that the tract of land was partitioned to him, and that he became the sole owner of the cause of action involved in this suit as of January 1, 1951. The suit was instituted when the Estate of Seawillow Caswell Keith had been closed and her estate had been distributed to her beneficiaries. "It is a general rule that heirs cannot sue in their own right as heirs for property of their ancestor's estate; but there are exceptions to this rule, as when there is no administrator or executor, or when the administration has been closed." Giddings v. Steele, 28 Tex. 732, 733. We believe that all the foregoing effectively denies the merit of the appellants' contentions.

Acknowledgment is had of the appellee's cross-point that the appellants should be here assessed ten percent on the amount in dispute as damages as provided by Rule 438, Texas Rules of Civil Procedure, for the reason that their appeal was taken for delay. Obviously, the point is without merit, and it is overruled.

By reason of the premises, the principal amount of the trial court's judgment is

affirmed. That portion of the judgment awarding interest between the dates of January 17, 1951, and October 17, 1956, in the sum of $2,882.77 is deleted and we therefore believe it proper that one-third of the costs of this appeal be taxed against the appellee, the remainder against the appellants, and it is so ordered. As modified and reformed, the judgment is here affirmed for the total amount of $8,355.90, plus interest thereon at the rate of six percent per annum from the date of the judgment of the trial court until paid.

### On Motion for Rehearing

In our original opinion we modified and reformed the trial court's judgment so as to delete that portion awarding interest to appellee between the dates of January 17, 1951, and October 17, 1956. We were of the opinion that appellee's general prayer for interest * * * "from the 5th day of January, 1951" * * * was not specific enough to sustain recovery between such dates. We also remarked that it is doubtful that appellee's cause of action constituted a claim for damages to which interest could be added as an element thereof during such interim. Should we have erred in our construction of appellee's prayer for interest, we think it proper to elucidate in regard to our latter statement concerning the propriety, in any event, of allowing appellee interest between the dates referred to:

Appellee's claim for relief is purely of an equitable nature. To receive equity he must concede to equity. Penalizing the appellants under these circumstances is beyond equity's pale. Appellee himself was unaware of the true excess in acreage of the tract of land at the time of his deed of January, 1951. He had no suspicion of an appreciable excess until the tract was sold by appellants in April, 1953, to the Federal Land Corporation. About or upon this latter date he testified that he was informed by one of the appellants of an acreage materially in excess of that which he had believed the tract contained. Possessed of this knowledge he yet delayed fifteen months longer before making demand of the appellants in February of 1956 in the form of the lawsuit brought against them for the value of the excess acreage, together with interest thereon. Under the testimony of all the party litigants, none knew the amount of acreage that exceeded the descriptive call in the deed until such was established by the testimony of a surveyor during the trial. The appellee's demands were clearly of an unliquidated nature and an approximate guess on his part and any payment that could have been tendered would have been a guess on appellants' part. To allow recovery of such interest would only be to penalize the appellants for failing to have the tract surveyed immediately after having received it. See: St. Louis, Southwestern Ry. Company of Texas v. Seale & Jones, Tex.Com.App., 267 S.W. 676.

Appellee's motion for rehearing is overruled.